MANDEL, GOVERNOR OF MARYLAND, ET AL. *v.*
BRADLEY ET AL.

No. 76–128.   Argued February 23, 1977—Decided June 16, 1977

*George A. Nilson,* Deputy Attorney General of Maryland,
argued the cause for appellants.   With him on the briefs were
*Francis B. Burch,* Attorney General, and *Robert A. Zarnoch,*
Assistant Attorney General.

*Jon T. Brown* argued the cause and filed a brief for appellees.

PER CURIAM.

Candidates for statewide or federal office in Maryland may
obtain a place on the general election ballot by filing with
the State Administrative Board of Election Laws a certifi-
cate of candidacy 70 days before a political party's primary
election and then by winning the primary.   Alternatively,
under provisions of the Maryland Election Code, a candidate

for statewide or federal office may qualify for a position on the general election ballot as an independent by filing, 70 days before the date on which party primaries are held, nominating petitions signed by at least 3% of the State's registered voters and a certificate of candidacy. Md. Elec. Code Ann. § 7-1 (1976 and Supp. 1976). In Presidential election years this filing date occurs approximately 230 to 240 days before the general election. In other years it occurs about 120 days before the general election. §§ 1-1 (a)(8), 5-2, 7-1.

Appellee Bruce Bradley decided in the spring of 1975 to run as an independent candidate for the United States Senate in 1976, a Presidential election year. Starting in the fall of 1975 Bradley collected signatures on nominating petitions. The requisite number was 51,155. On March 8, 1976, the deadline for filing, Bradley submitted 53,239 signatures and filed a certificate of candidacy for the Senate seat. However, on April 15, 1976, the State Administrative Board of Election Laws determined that only 42,049 of the signatures were valid and denied him a place on the ballot.

Two weeks later, Bradley and the other appellees—petition signers and other voter supporters of Bradley—filed the instant suit, alleging that the procedures mandated by § 7-1 of the Md. Elec. Code (1976 and Supp. 1976) constitute an unconstitutional infringement of their associational and voting rights under the First and Fourteenth Amendments. They complained that Maryland's early filing date made it more difficult for Bradley to obtain the requisite number of signatures than for a party member to win a primary and sought, *inter alia*, an injunction against future enforcement of the offending provision of Maryland's election procedures. A three-judge District Court agreed with the appellees that the early filing deadline of § 7-1 (i) (Supp. 1976) was an unconstitutional burden on an independent candidate's access to the ballot and ordered the appellants to give Bradley 53

days after the party primaries to gather the requisite number of signatures.[1]

The court based its holding on our summary affirmance in *Tucker* v. *Salera,* 424 U. S. 959 (1976), aff'g 399 F. Supp. 1258 (ED Pa. 1975). In *Salera,* a three-judge court declared unconstitutional a Pennsylvania law setting the deadline for an independent candidate to gather signatures to obtain a place on the ballot 244 days before the general election in a Presidential election year. Under the Pennsylvania law, independents had to submit signatures of only 2% of the largest vote cast for any candidate in the preceding statewide general election, but they had to gather the required signatures within a 21-day period prior to the filing deadline. In declaring the Pennsylvania statute invalid, the three-judge court relied, not on the short period for signature gathering (which it thought was valid under *Storer* v. *Brown,* 415 U. S. 724 (1974)), but solely on the early deadline for submission of the necessary signatures. The court . found that the deadline substantially burdened ballot access of independents by requiring them to obtain the necessary signatures at a time when the election issues were undefined and the voters were apathetic. It also rejected various countervailing state interests that had been urged. This Court summarily affirmed the judgment of the three-judge court in *Salera.*

The three-judge court in this case viewed this Court's summary affirmance in *Salera* as controlling precedent for the proposition that early filing dates, such as that employed in Maryland, are unconstitutionally burdensome on the independent candidate's access to the ballot, and therefore decided in favor of the appellees. We noted probable jurisdiction, 429 U. S. 813 (1976).

---

[1] Bradley successfully gathered the requisite number of signatures, obtained a place on the ballot, ran, and lost. This case is nonetheless not moot. *Storer* v. *Brown,* 415 U. S. 724, 737 n. 8 (1974).

The District Court erred in believing that our affirmance in *Salera* adopted the reasoning as well as the judgment of the three-judge court in that case and thus required the District Court to conclude that the early filing date is impermissibly burdensome. *Hicks* v. *Miranda,* 422 U. S. 332 (1975), held that lower courts are bound by summary actions on the merits by this Court, but we noted that "[a]scertaining the reach and content of summary actions may itself present issues of real substance." *Id.,* at 345 n. 14. Because a summary affirmance is an affirmance of the judgment only, the rationale of the affirmance may not be gleaned solely from the opinion below.

> "When we summarily affirm, without opinion, . . . we affirm the judgment but not necessarily the reasoning by which it was reached. An unexplicated summary affirmance settles the issues for the parties, and is not to be read as a renunciation by this Court of doctrines previously announced in our opinions after full argument." (Footnote omitted.) *Fusari* v. *Steinberg,* 419 U. S. 379, 391–392 (1975) (BURGER, C. J., concurring).

Summary affirmances and dismissals for want of a substantial federal question without doubt reject the specific challenges presented in the statement of jurisdiction and do leave undisturbed the judgment appealed from. They do prevent lower courts from coming to opposite conclusions on the precise issues presented and necessarily decided by those actions. After *Salera,* for example, other courts were not free to conclude that the Pennsylvania provision invalidated was nevertheless constitutional. Summary actions, however, including *Salera,* should not be understood as breaking new ground but as applying principles established by prior decisions to the particular facts involved.

Here, the District Court ruled that legally *"Salera* decides the issue before us, and as the latest expression of the Supreme

Court, we are bound to follow it." App. to Jurisdictional Statement 12a. The precedential significance of the summary action in *Salera,* however, is to be assessed in the light of all of the facts in that case; and it is immediately apparent that those facts are very different from the facts of this case. There, in addition to the early filing date, signatures had to be gathered within a 21-day period. This limited time enormously increased the difficulty of obtaining the number of signatures necessary to qualify as an independent candidate.[2]

This combination of an early filing deadline and the 21-day limitation on signature gathering is sufficient to distinguish *Salera* from the case now before us, where there is no limitation on the period within which such signatures must be gathered. In short, *Salera* did not mandate the result reached by the District Court in this case.

Because of its preoccupation with *Salera,* the District Court failed to undertake an independent examination of the merits. The appropriate inquiry was set out in *Storer* v. *Brown, supra,* at 742:

> "[I]n the context of [Maryland] politics, could a reasonably diligent independent candidate be expected to satisfy the [ballot access] requirements, or will it be only rarely that the unaffiliated candidate will succeed in getting on the ballot? Past experience will be a helpful, if not always an unerring, guide: it will be one thing if independent candidates have qualified with some regularity and quite a different matter if they have not. We note here that the State mentions only one instance of

---

[2] In *Storer* v. *Brown, supra,* as the District Court noted, the 24-day limitation was not by itself enough to invalidate the statute, but we clearly recognized that the limitation, when combined with other provisions of the election law, might invalidate the statutory scheme. 415 U. S., at 742–743. The District Court in this case erred in reading *Storer* v. *Brown* as holding irrelevant the limited period of time in which signatures must be gathered.

an independent candidate's qualifying . . . but disclaims having made any comprehensive survey of the official records that would perhaps reveal the truth of the matter."

In *Storer* itself, because the District Court had not applied these standards in adjudicating the constitutional issues before it, we remanded the case "to permit further findings with respect to the extent of the burden imposed on independent candidates." 415 U. S., at 740. There is no reason here for doing any less. The District Court did not sift through the conflicting evidence and make findings of fact as to the difficulty of obtaining signatures in time to meet the early filing deadline. It did not consider the extent to which other features of the Maryland electoral system—such as the unlimited period during which signatures may be collected, or the unrestricted pool of potential petition signers—moderate whatever burden the deadline creates. See Developments in the Law—Elections, 88 Harv. L. Rev. 1111, 1142–1143 (1975). It did not analyze what the past experience of independent candidates for statewide office might indicate about the burden imposed on those seeking ballot access. Instead, the District Court's assumption that the filing deadline by itself was *per se* illegal—as well as the expedited basis upon which the case necessarily was decided [3]—resulted in a failure to apply the constitutional standards announced in *Storer* to the statutory provisions here at issue.[4]

---

[3] The appellees filed this action on April 30, 1976. The three-judge court was convened and heard argument on May 12, and it announced its decision on May 17.

[4] There is evidence in the record that in both 1972 and 1976—the only years in which the early deadline was effective—no candidate for statewide office succeeded in qualifying for the ballot. There is also evidence tending to substantiate the appellees' contention that there existed a variety of obstacles in the way of obtaining support for an independent candidate far in advance of the general election. Without

The application of those standards to the evidence in the record is, in the first instance, a task for the District Court. We therefore vacate the judgment, and remand the case for further proceedings consistent with this opinion.[5]

*It is so ordered.*

MR. JUSTICE REHNQUIST took no part in the consideration or decision of this case.

MR. JUSTICE BRENNAN, concurring.

I join the opinion of the Court but write to emphasize the Court's treatment of the rule announced in *Hicks* v. *Miranda*, 422 U. S. 332 (1975).

In a dissent from the denial of certiorari in *Colorado Springs Amusements, Ltd.* v. *Rizzo*, 428 U. S. 913 (1976), I stated why, in my view, the federal and state courts should give "appropriate, but not necessarily conclusive, weight to our summary dispositions," *id.*, at 923, rather than be required, as the Court held in *Hicks*, "to treat our summary dispositions of appeals as conclusive precedents regarding constitutional challenges to like state statutes or ordinances." 428 U. S., at 913.

The Court by not relying on our summary affirmance in *Tucker* v. *Salera*, 424 U. S. 959 (1976), and *Auerbach* v. *Mandel*, 409 U. S. 808 (1972), effectively embraces that view, and vividly exposes the ambiguity inherent in summary dispositions and the nature of the detailed analysis that is

intimating any ultimate view on the merits of the appellees' challenge, we have no doubt that it has sufficient substance to warrant a remand for further proceedings.

[5] The District Court will be free on remand to consider the appellees' argument that the "technical and administrative requirements of the petition signing process" are an unconstitutional burden on ballot access—a question never reached in view of the decision for the appellees and Bradley's ultimate success in qualifying for the ballot.

essential before a decision can be made whether it is appro-priate to accord a particular summary disposition precedential effect. After today, judges of the state and federal systems are on notice that, before deciding a case on the authority of a summary disposition by this Court in another case, they must (a) examine the jurisdictional statement in the earlier case to be certain that the constitutional questions presented were the same and, if they were, (b) determine that the judgment in fact rests upon decision of those questions and not even arguably upon some alternative nonconstitutional ground. The judgment should not be interpreted as deciding the constitutional questions unless no other construction of the disposition is plausible. In other words, after today, "appropriate, but not necessarily conclusive, weight" is to be given this Court's summary dispositions.

Mr. Justice White, with whom Mr. Justice Powell joins, concurring.

Although there are many indications in the District Court's opinion that it not only considered *Tucker* v. *Salera,* 424 U. S. 959 (1976), controlling, but also independently invalidated the Maryland law on grounds similar to or the same as those employed in *Salera*—in which event, a remand would be inappropriate—it is fairly arguable that the District Court should unmistakably record its opinion as to the validity of the Maryland law. A number of my Brethren are of this view, and I defer to their judgment.

Mr. Justice Stevens, dissenting.

In my judgment the Maryland statute unfairly discriminates against independent candidates in one respect. It requires the independent to make his decision to become a candidate much sooner than a member of a national political party.

A party member is merely required to file a certificate of candidacy 70 days before the primary election. That pro-

cedure is so simple that he may postpone his decision until that very day and still satisfy all legal requirements for candidacy. In contrast, the independent must *complete* the signature gathering process by the 70th day preceding the primary election. Since the task of obtaining the signatures of 3% of the registered voters inevitably will require a significant amount of time, the independent must make his decision to run well in advance of the filing deadline.

In my opinion, the State has not put forward any justification for this disparate treatment. Moreover, it is potentially a matter of great significance. The decision to become a candidate may be prompted by a sudden, unanticipated event of great national or local importance. If such an event should occur on the 71st day before a primary, national party members could make a timely decision to run but independents could not.

The statute should be evenhanded in its impact on the timing of the most important decision any candidate must make. The burdens that an independent must shoulder are heavy enough without requiring him to make that decision before his most formidable opponents must do so.*

---

*In *Jenness* v. *Fortson,* 403 U. S. 431, this Court upheld the Georgia filing procedures applicable to independent candidates seeking a place on the general election ballot. These procedures required the independent candidate to collect signatures of at least 5% of the number of registered voters at the last general election for the office in question. *Id.,* at 432. The independent candidate had 180 days in which to accomplish this task and had to file the completed petitions by the same deadline which a party candidate had to meet. *Id.,* at 433–434. Thus, the procedures for filing by independents under the Georgia statute are similar to those aspects of the Maryland procedures in issue here which I find place such a handicap on independent candidates. However, the question I find decisive in this case was neither raised nor decided by the Court in *Jenness,* see *id.,* at 434. Thus, that decision is not controlling on this point, *KVOS, Inc.* v. *Associated Press,* 299 U. S. 269, 279, quoting *Webster* v. *Fall,* 266 U. S. 507, 511 (" 'Questions which merely lurk in the

On the basis of the record developed in the District Court, and the full argument on the merits in this Court, I would therefore affirm the judgment.

---

record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents' ").

For the reasons stated in *Edelman* v. *Jordan,* 415 U. S. 651, 670–671, I do not regard the summary affirmance in *Auerbach* v. *Mandel,* 409 U. S. 808, as controlling.