John B. ANDERSON, Stephen P. Kelley, James D. Harrington, and Gerald M. Eisenstat, Plaintiffs,

v.

Rodney S. QUINN, in his official capacity as Secretary of State of the State of Maine, Defendant.

Civ. No. 80–0176 P.

United States District Court, D. Maine.

Aug. 11, 1980.

D. Brock Hornby, Perkins, Thompson, Hinckley & Keddy, Portland, Me., Mitchell Rogovin, George T. Frampton, Jr., Ronna Lee Beck, Rogovin, Stern & Huge, Washington, D.C., for plaintiffs.

Paul F. Macri, Asst. Atty. Gen., Dept. of the Atty. Gen., Augusta, Me., for defendants.

OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

Congressman John B. Anderson is an independent candidate for President of the United States in the November 1980 general election. He declared his independent candidacy on April 24, 1980. In this action

Anderson and three of his supporters[1] challenge the constitutionality of a Maine statute, 21 Me.Rev.Stat.Ann. § 494(9), which requires an independent candidate for President of the United States to file a nominating petition with the Secretary of State of Maine by April 1, 1980—181 days prior to the date when political parties are required to certify their nominees for Presidential electors to the Secretary of State and 217 days before the November 4, 1980 general election.[2] The statutory filing deadline prevents the placement of Anderson's name on the November ballot as an independent candidate for President. Anderson and his supporters charge that, as a result, the filing deadline impermissibly burdens their constitutional rights to associate for the advancement and expression of political beliefs and effectively to exercise their franchise for the Presidential candidate of their choice, as guaranteed by the First and Fourteenth Amendments, and invidiously discriminates against plaintiffs and others similarly situated, denying them the equal protection of the laws secured by the Fourteenth Amendment.[3] Plaintiffs seek a declaratory judgment that 21 Me.Rev.Stat. Ann. § 494(9) is unconstitutional, null and void as applied to independent candidates for President, or alternatively as applied to the independent candidacy of Congressman Anderson. Plaintiffs also seek a permanent injunction enjoining the defendant Secretary of State of Maine[4] from enforcing the filing deadline against Anderson, and a reasonable attorney's fee pursuant to 42 U.S.C. § 1988. Jurisdiction is properly asserted under 28 U.S.C. §§ 1331, 1343(3) and 2201, and 42 U.S.C. § 1983.

The matter is before the Court on plaintiffs' motion for summary judgment and a stipulation of facts. The legal issues have been comprehensively briefed and argued.

For the reasons to be stated, plaintiffs' motion for summary judgment is granted.

I

The significant facts may be briefly summarized. Until April 24, 1980 Congressman Anderson was an active candidate for nomination by the Republican party for President of the United States. On April 24, 1980, he announced his independent candidacy for President. Subsequent to that date his supporters gathered the number of signatures of registered Maine voters required by Maine law for nominating petitions to place Anderson's name on the general election ballot in November and submitted them to municipal registrars for certification by 5:00 p. m., June 5, 1980, as required by 21 Me.Rev.Stat.Ann. § 494(8). On June 9, the first working day after the last of the certified petitions were received from the municipal registrars, the nominating petitions, containing approximately 6,000 certified signatures, were tendered to the office of the Secretary of State, together with the consent forms required by 21 Me.Rev.Stat.Ann. § 495. The state officials rejected the petitions and consent forms on the sole ground that they were not timely filed under 21 Me.Rev.Stat.Ann. § 494(9).

1. Plaintiff Stephen P. Kelley, a registered Maine voter, seeks certification as a candidate to appear on the November 1980 ballot as a Presidential elector for Anderson. Plaintiff James D. Harrington, a registered Maine voter, desires to cast his vote in the November 1980 election for the electors pledged to Anderson. Plaintiff Gerald M. Eisenstat, a registered New Jersey voter, intends to cast his vote in the November 1980 general election for the electors pledged to Anderson in New Jersey.

2. Anderson and his supporters have successfully challenged the constitutionality of state statutory filing deadlines in at least three other federal courts. See Anderson v. Hooper, No. 80–432–M Civil (D.N.M. July 8, 1980) (preliminary injunction); Anderson v. Celebrezze, No.

C–2–80–400 (S.D.Ohio July 21, 1980) (final judgment); Anderson v. Morris, Civ. No. Y–80–1632 (D.Md. August 6, 1980) (final judgment).

3. Plaintiffs also contend that the early filing deadline violates the Supremacy Clause, U.S. Const. art. VI, and should be struck down as the result of a "malfunction of the legislative process." The Court finds it unnecessary to reach these additional arguments.

4. Defendant Rodney S. Quinn, Secretary of State of the State of Maine, is charged with administering the relevant sections of the Maine election law.

Pursuant to an agreement between the parties, while rejecting the petitions as untimely, the state officials accepted custody of them and have processed them in accordance with the usual procedures. The Secretary of State has determined that, apart from their noncompliance with the April 1 filing deadline, the nominating petitions and consent forms comply with the requirements of Maine law and contain a sufficient number of signatures to qualify Anderson for placement on the general election ballot in November. The parties agree that Anderson would have been certified as an independent candidate for President and placed on the general election ballot, but for the April 1 filing deadline prescribed by 21 Me.Rev.Stat.Ann. § 494(9).

## II

The Supreme Court has firmly established that "[r]estrictions on access to the ballot burden two distinct and fundamental rights, 'the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively.'" *Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 184, 99 S.Ct. 983, 990, 59 L.Ed.2d 230 (1979) (quoting *Williams v. Rhodes*, 393 U.S. 23, 30, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968)). The Court has also repeatedly held that substantial burdens on these rights are invalid under the First and Fourteenth Amendments and under the Equal Protection Clause unless essential to serve a compelling state interest. *Illinois State Board of Elections v. Socialist Workers Party, supra; American Party of Texas v. White*, 415 U.S. 767, 780–81, 94 S.Ct. 1296, 1305–06, 39 L.Ed.2d 744 (1974); *Storer v. Brown*, 415 U.S. 724, 729, 94 S.Ct. 1274, 1278, 39 L.Ed.2d

714 (1974); *Williams v. Rhodes, supra*, 393 U.S. at 31, 89 S.Ct. at 10. And, in its most recent ballot access decision, the Supreme Court emphasized that " 'even when pursuing a legitimate interest, a State may not choose means that unnecessarily restrict constitutionally protected liberty,' *Kusper v. Pontikes*, 414 U.S. 51, 58–59 [94 S.Ct. 303, 308, 38 L.Ed.2d 260] (1973), and we have required that States adopt the least drastic means to achieve their ends." *Illinois State Board of Elections v. Socialist Workers Party, supra*, 440 U.S. at 185, 99 S.Ct. at 991.

■ The restriction on an independent Presidential candidate's access to the ballot imposed by Maine's April 1 filing deadline substantially burdens the associational and franchise rights of independent candidates and their supporters, and also effects an invidious discrimination. An independent candidate must decide to run as an independent, gather sufficient certified signatures, and file with the Secretary of State by April 1. In practice, the deadline bars an otherwise viable independent candidate from the Maine general election ballot solely because he decides to run after April 1. Maine imposes no similar burden on party candidates for the Presidency. Maine does not require party candidates for President to qualify or declare their candidacies by any particular date, and permits the names of party Presidential electors to be certified to the Secretary of State as late as September 30.[5] Clearly, then, Maine's April 1 filing deadline as applied to independent candidates for the Presidency places a substantial and unequal burden on them.

Only a compelling state interest can justify the substantial and unequal burden imposed by Maine's April 1 filing deadline upon independent candidates for President.[6]

---

**5.** The Maine election laws require that the names of Presidential electors nominated by a political party be certified to the Secretary of State within 60 days after the state convention, 21 Me.Rev.Stat.Ann. § 402(2), which must be held between March 1 and August 1 of the election year. *Id.* § 401. Political parties are not required to certify their Presidential and Vice Presidential candidates to the Secretary of State by any particular date.

**6.** The State argues that the traditional "compelling state interest" analysis in ballot access cases has been superseded by the "reasonably diligent candidate" standard set forth by the Supreme Court in *Storer v. Brown, supra*, and *Mandel v. Bradley*, 432 U.S. 173, 97 S.Ct. 2238, 53 L.Ed.2d 199 (1977) (per curiam). In *Storer* and *Mandel*, plaintiffs had tried and failed to obtain the required number of signatures on nominating petitions by the filing deadline.

Yet the State has failed to show any compelling interest, or even a rational justification, for the April 1 filing deadline. The State does not contend that Congressman Anderson has failed to satisfy the State's interest in keeping a frivolous candidate off the ballot by assuring that he is a serious candidate with a significant level of support, the state interest the Supreme Court has most frequently recognized as justifying ballot access restrictions. *See, e. g., Illinois State Board of Elections v. Socialist Workers Party, supra,* 440 U.S. at 184–85, 99 S.Ct. at 990–91; *American Party of Texas v. White, supra,* 415 U.S. at 782 n.14, 94 S.Ct. at 1306 n.14; *Lubin v. Panish,* 415 U.S. 709, 715, 94 S.Ct. 1315, 1319, 39 L.Ed.2d 702 (1974); *Jenness v. Fortson, supra* note 6, 403 U.S. at 442, 91 S.Ct. at 1976. Nor does the State assert that an April 1 filing deadline is required to provide adequate time to verify petitions and print ballots, another state interest which has been recognized by the courts. *See, e. g., Salera v. Tucker,* 399 F.Supp. 1258, 1267 (E.D.Pa. 1975), *aff'd,* 424 U.S. 959, 96 S.Ct. 1451, 47 L.Ed.2d 727 (1976). Rather, Maine maintains that two other state interests are served by the restriction imposed by the April 1 filing deadline.

First, the State claims that the filing deadline advances "the State's interest in treating all candidates within the State's practical power to regulate equally." The State's assertion is that it cannot regulate the manner in which party Presidential candidates are selected because of the Supreme Court's decision in *Cousins v. Wigoda,* 419 U.S. 477, 95 S.Ct. 541, 42 L.Ed.2d 595 (1975), and that therefore the filing deadline can be justified because it treats equally all candidates within the State's power to regulate. This argument borders on the frivolous. Plainly, the burdens imposed on independent Presidential candidates must be compared with those imposed on other candidates for the same office, not with candidates for other offices who are elected through an entirely different process.[7]

The second interest asserted by the State is "the State's . . . interest [in] the protection of the integrity of the independent route to the ballot." The State's position is that it has a valid interest in assuring that independent candidates are indeed independent, and therefore in preventing an unsuccessful party candidate from pursuing a second route to the general election ballot. *See Storer v. Brown, supra,* 415

The Supreme Court remanded both cases for further factual development in the lower courts, with instructions to determine whether, in the context of the particular State's politics, "a reasonably diligent independent candidate" could be expected to satisfy the ballot access requirement. *Storer v. Brown, supra,* 415 U.S. at 742, 94 S.Ct. at 1285; *Mandel v. Bradley, supra,* 432 U.S. at 177–78, 97 S.Ct. at 2241. The standard enunciated in *Storer* and *Mandel* plainly has no application to this case. What the lower courts were called upon to determine in those cases was whether the State's method for assuring that a candidate had a "significant modicum of support," *Jenness v. Fortson,* 403 U.S. 431, 442, 91 S.Ct. 1970, 1976, 29 L.Ed.2d 554 (1971), was unduly burdensome. In the present case, there is no dispute that Congressman Anderson has sufficient community support to merit placement on the ballot. Nor do plaintiffs claim that the nominating procedures themselves are unduly burdensome. The only issue is whether the State can require an independent candidate for President to begin to pursue his candidacy in Maine before April 1 and require no equivalent effort by the nominees for President of political parties. More-

over, any doubt as to the continued viability of the "compelling state interest" test where petition filing requirements are challenged has been dispelled by the Supreme Court's most recent ballot access decision, *Illinois State Board of Elections v. Socialist Workers Party, supra,* 440 U.S. at 184, 99 S.Ct. at 990.

7. Party candidates for statewide elective offices in Maine secure a place on the general election ballot by winning a party primary. To qualify for the primary, they must file nominating petitions by April 1. By a 1979 amendment to the Maine election laws, ch. 359, 1979 Maine Acts 443, the Maine legislature required independent candidates to file by the same date "to Make Equal Application of Legal Requirements for Independents, Democrats and Republicans in all Respects." *Id.* The effect was to establish the same filing date for nominating petitions both for candidates in the primaries, *see* 21 Me.Rev.Stat.Ann. §§ 444 & 445(8) and for independent candidates. *Id.* § 494(9). There is no primary election in Maine for candidates for President, Vice President or Presidential elector.

U.S. at 733, 94 S.Ct. at 1280. In effect, the State argues that the April 1 filing deadline acts as a disaffiliation requirement to prevent persons who, having failed to obtain a party nomination, then seek to run as independents. *See id.* at 733–36, 94 S.Ct. at 1280–82. *See also Kusper v. Pontikes, supra,* 414 U.S. at 59–61, 94 S.Ct. at 308–309; *Rosario v. Rockefeller,* 410 U.S. 752, 760–62, 93 S.Ct. 1245, 1251–52, 36 L.Ed.2d 1 (1973). The short answer to this contention is that the filing deadline plainly was not intended to serve as a disaffiliation requirement,[8] and it does not serve that purpose in practice. The legislative purpose of Section 494(9), as conceded by the State, was to establish a filing deadline for independent candidates identical to that for party candidates running in primaries. Legis.Doc. 1136, 109th Legis., 1st Sess. (1979) (Statement of Fact). Concerns over the disaffiliation of independent candidates were addressed by the Legislature in entirely different statutory provisions, 21 Me.Rev.Stat. Ann. §§ 135(2) & 493; they had nothing to do with the imposition of the deadline. Although enacted by the same Act, ch. 359, 1979 Me.Acts 443, there is no indication in the legislative history that Section 494(9) and the disaffiliation provisions were not separate measures with distinct purposes. *See* Legis.Doc. 1136, *supra* ; 1979 Me.Legis. Rec. 1024, 1111. Moreover, the deadline is wholly ineffective as a disaffiliation provision. On its face, it does not prohibit candidates affiliated with a political party, like Anderson, from running as independents as long as they meet the deadline. And it does prohibit genuinely unaffiliated candidates from running as independents if they fail to meet the deadline.

Since the April 1 filing deadline imposed upon independent candidates for President effects substantial and unequal burdens on plaintiffs' rights of association and franchise and is not justified by any compelling state interest, the Court holds 21 Me.Rev. Stat.Ann. § 494(9) unconstitutional as applied to the independent candidacy of Congressman John B. Anderson for President of the United States.

### III

In accordance with the foregoing, plaintiffs' motion for summary judgment is granted, and judgment will be entered:

(1) Declaring the deadline for filing nomination petitions and consent forms on behalf of independent candidates prescribed in 21 Me.Rev.Stat.Ann. § 494(9) is unconstitutional, null and void as applied to the independent candidacy of plaintiff John B. Anderson for President of the United States; and

(2) Permanently enjoining defendant Rodney S. Quinn, his agents, servants, employees, subordinates, and all other persons acting in concert with him, from enforcing or applying the filing deadline set forth in 21 Me.Rev.Stat.Ann. § 494(9) as a ground for failing or refusing to certify the names of plaintiff Anderson and his running mate for Vice President for inclusion on the official Maine general election ballot as independent candidates for President and Vice President in the general election to be held on November 4, 1980.

IT IS SO ORDERED.

---

8. Indeed, the record suggests that the Maine legislature did not intend to impose any disaffiliation requirement on independent candidates for President and Vice President. The sole reason for imposing the disaffiliation requirement on independent candidates mentioned in the legislative history was to create a restriction equivalent to that imposed on candidates in party primaries, who are required by 21 Me.Rev.Stat.Ann. § 134(3) to be affiliated with the party in whose primary they are running.

*See* 1979 Me.Legis.Rec. 1024 (Remarks of Rep. Tarbell). There is no equivalent requirement imposed on party candidates for the Presidency and Vice Presidency. Furthermore, the Maine Attorney General's office has determined that 21 Me.Rev.Stat.Ann. § 493, the disaffiliation statute for independents, does not apply to candidates for President and Vice President, although the reasons for that interpretation do not appear in the record.