**Alwin E. HOPFMANN, et al., Plaintiffs, Appellants,**

v.

**Michael Joseph CONNOLLY, et al., Defendants, Appellees.**

No. 84–1317.

United States Court of Appeals, First Circuit.

Argued Sept. 10, 1984.

Decided Oct. 22, 1984.

Rehearing and Rehearing En Banc Denied Dec. 10, 1984.

Lawrence J. Ball, Detroit, Mich., with whom Stephen P. Dowd, Laurence Elgin, James F. Schoener, Miller, Canfield, Paddock & Stone, Detroit, Mich., were on brief, for plaintiffs, appellants.

Alexander G. Gray, Jr., Asst. Atty. Gen., with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., was on brief, for Michael Joseph Connolly and Francis X. Bellotti, defendants, appellees.

Keith C. Long, Boston, Mass., with whom James Roosevelt, Jr., James H. Wexler, and Herrick & Smith, Boston, Mass., were on brief, for Chester G. Atkins and the Democratic State Committee of Massachusetts, defendants, appellees.

Before CAMPBELL, Chief Judge, COWEN,* Senior Circuit Judge, and BOWNES, Circuit Judge.

COWEN, Senior Circuit Judge.

This is an appeal from an order of the District Court for the District of Massachusetts which dismissed appellants' (plaintiffs') complaint. The principal plaintiff, Alwin E. Hopfmann, was an unsuccessful candidate for the Democratic nomination for the office of United States Senator in 1982. He, and four individuals who desired to vote for him, brought this action in the district court against the Secretary of the Commonwealth of Massachusetts, The Attorney General of the Commonwealth of Massachusetts, the Chairman of the Democratic Party of the Commonwealth of Massachusetts, and the Democratic State Committee of Massachusetts (defendants). Plaintiffs sought injunctive and declaratory relief, claiming that a cornucopia of constitutional rights were violated when Hopfmann's name was excluded from the ballot in the Democratic primary. For the reasons to be set forth, we affirm the decision of the district court.

I.

This action is basically an attack on the constitutionality and validity of Article Six, Section III of the Charter of the Massachu-

setts Democratic Party (the 15 percent rule), which provides that only those candidates who receive 15 percent of the vote on any ballot at the convention may challenge the convention's endorsement in a state primary election. In 1982, Hopfmann failed to obtain 15 percent of the vote and the Secretary of the Commonwealth of Massachusetts ordered his name excluded from the primary ballot. The filing of the complaint followed this action.

After the filing of the complaint, defendants filed motions to dismiss. On June 24, 1982, proceedings were stayed pending the decision of the Massachusetts Supreme Judicial Court in the related proceeding of *Langone v. Secretary of the Commonwealth*. A three-judge panel was convened to consider the issues, brought under the Voting Rights Act, 42 U.S.C. § 1973 et seq., and on July 7, 1982, the panel denied preliminary relief on the claim. On July 8, 1982, plaintiffs' application, seeking a stay of the denial of preliminary relief and an order directing the Secretary of the Commonwealth to place Hopfmann's name on the Democratic ballot, was denied by Justice Brennan. After resubmittal, it was denied by Justice Rehnquist on July 9, 1982. Hopfmann's petition for a writ of habeas corpus (requesting that his name be placed on the Democratic primary ballot) filed September 20, 1982, was denied by the full United States Supreme Court on October 18, 1982. Plaintiffs' petition for a writ of prohibition and/or mandamus and/or injunction, requesting that Hopfmann's name be placed on the Democratic primary ballot, filed September 30, 1982, was denied by the United States Supreme Court on November 29, 1982. Plaintiffs' application, filed October 25, 1982, seeking a stay of the general election or, in the alternative, a special primary election, was denied by Justice Brennan on October 26, 1982. After resubmittal, it was again denied, by the full United States Supreme Court, on November 1, 1982. Plaintiffs' applications, filed November 5, 1982, to enjoin the Governor

* Of the Federal Circuit, sitting by designation.

of Massachusetts from certifying the election of Senator Edward M. Kennedy and the United States Senate from seating him, were also denied by the United States Supreme Court.

A copy of the opinion of the Massachusetts Supreme Judicial Court in *Langone v. Secretary of the Commonwealth*, 388 Mass. 185, 446 N.E.2d 43 (1983), was filed with the district court on February 23, 1983. On April 8, 1983, a copy of the order of the United States Supreme Court, dismissing the appeal in that case and denying the alternative petition for *certiorari* was filed with the district court. *Langone v. Connolly*, 460 U.S. 1057, 103 S.Ct. 1510, 75 L.Ed.2d 938 (1983).

On April 9, 1984, the district court, treating defendants' motions to dismiss as motions for summary judgment, granted them and dismissed the complaint.

## II.

Here, as in the court below, plaintiffs' principal attack on the 15 percent rule is the contention that the enforcement of the rule violates their rights under the First and Fourteenth Amendments to the United States Constitution. The parties are agreed that Hopfmann had complied with the state statutory requirement (Mass.G.L. c. 53) for having his name placed on the primary ballot. To comply with state requirements, candidates must submit nomination papers signed by 10,000 voters. Specifically, plaintiffs argue that since this statutory requirement had been met, the denial of Hopfmann's access to the ballot in the primary election and the deprivation of the rights of the remaining parties to participate in choosing the party's candidates, abridged rights guaranteed to them by the First and Fourteenth Amendments.

As stated above, proceedings in the district court were stayed pending the decision in *Langone v. Secretary of the Commonwealth, supra,* which was decided February 16, 1983. Contrary to plaintiffs' position in this appeal, the Supreme Judicial Court of Massachusetts held in that case that G.L. c. 53 incorporated the 15 percent rule, and that the rule did not deprive candidates or voters of their rights of free speech, association, due process, or equal protection guaranteed to them by the First and Fourteenth Amendments of the United States Constitution. The United States Supreme Court summarily dismissed the appeal from that decision for want of jurisdiction in April 1983. *Langone v. Connolly, supra.* The district court's decision in this case was largely based on the decision of the Supreme Judicial Court and the dismissal of the appeal in that case by the United States Supreme Court.

Relying on *Hicks v. Miranda*, 422 U.S. 332, 344, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223 (1975), defendants urge that the dismissal of the appeal by the United States Supreme Court for lack of jurisdiction, *i.e.,* for want of a substantial federal question, is a decision on the merits which is binding on this court and is dispositive of the First and Fourteenth Amendment claims. Citing *Maryland v. Baltimore Radio Show*, 338 U.S. 912, 919, 70 S.Ct. 252, 255, 94 L.Ed. 562 (1950), plaintiffs respond that it is not clear that the Supreme Court's decision was a dismissal of the appeal, and instead, may be construed as a denial of the petition for *certiorari.* Consequently, they argue that the decision has no precedential value in this court.

■ We agree with the contentions of defendants. In *Langone v. Connolly*, the appellants couched their jurisdictional statement in the alternative, requesting that the statement be treated as an appeal under 28 U.S.C. § 1257(2), and to the extent that the statement would not be considered an appeal under that subsection, they requested that it be treated as a petition for *certiorari* under 28 U.S.C. § 1257(3). The order of dismissal of the United States Supreme Court stated:

The *appeals* are dismissed for want of jurisdiction. Treating the papers whereon the appeals were taken as petitions for writs of certiorari, certiorari is denied. [Emphasis added.]

We find that the circumstances in *Langone v. Connolly* show that plaintiffs' application to the United States Supreme Court was treated as an appeal under 28 U.S.C. § 1257(2) and dismissed. The dissent of Justice Stevens, in which Justice Rehnquist and Justice O'Connor joined, leads us to that conclusion. The dissent of Justice Stevens stated in part:

These appeals present substantial, unresolved questions regarding the accommodation of competing First Amendment values; the interests of would-be candidates and voters in eligibility for the ballot, and the interests of party members in political association without undue governmental intrusion. ⁂ ⁂ ⁂

The case is properly before this Court on appeal.

⁂   ⁂   ⁂   ⁂   ⁂   ⁂

460 U.S. at 1057 and 1058, 103 S.Ct. at 1510 and 1511, 75 L.Ed.2d at 938 and 939. The language in the majority's dismissal of the petition is understandable when read in conjunction with appellants' jurisdictional statement. We think that the majority of the Supreme Court was taking an extra precaution to deny the application *in toto,* since the order stated that the appeal was dismissed for lack of jurisdiction, but that if the papers were treated as a petition for *certiorari,* the petition was also denied.

In holding that the decision of the United States Supreme Court in *Langone v. Connolly* is final and binding, we are mindful of Justice Brennan's concurring opinion in *Mandell v. Bradley,* 432 U.S. 173, 97 S.Ct. 2238, 53 L.Ed.2d 199 (1977), giving narrow scope to summary dispositions by the United States Supreme Court. In pertinent part, that opinion states:

After today, judges of the state and federal systems are on notice that before deciding a case on the authority of a summary disposition by this Court in another case, they must (a) examine the jurisdictional statement in the earlier case to be certain that the constitutional questions were the same and if they were, (b) determine that the judgment in fact rests upon decision of those ques-

tions, not even arguably upon some alternative nonconstitutional ground." The judgment should not be interpreted as deciding the constitutional questions unless no other construction of the disposition is plausible. [432 U.S. at 180, 97 S.Ct. at 2242.]

An examination of the appellants' jurisdictional statement clearly shows that the same constitutional questions which are raised by plaintiffs' First and Fourteenth Amendment claims in this case, were at issue in *Langone v. Secretary of the Commonwealth,* and that the judgment of the court in that case rested upon a decision of those constitutional questions.

### III.

Plaintiffs maintain that even if this court holds that the United States Supreme Court action in *Langone v. Connolly* is dispositive of their First and Fourteenth Amendment claims, they are still entitled to prevail, because the enforcement of the 15 percent rule violates Article I, Section 4, Clause 1, Article I, Section 3, Clause 3, and the Seventeenth Amendment of the Constitution.

We consider first the claim based on Article I, Section 4, Clause 1. This clause provides:

The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing [sic] Senators.

According to plaintiffs, this provision mandates that the state legislatures alone may prescribe the conditions under which elections are held. Therefore, they declare that the imposition of any conditions on elections for the United States Senate by any entity other than the state legislature, such as the Democratic Party through the 15 percent rule, is an unlawful usurpation of the state legislature's constitutional prerogative.

This argument reaches too far. Plaintiffs' theory rests on the proposition that no power to impose restrictions on regular or primary elections may be delegated to political parties by the state legislature. Such an extreme interpretation, if adopted with respect to primary elections, could effectively destroy the ability of political parties to select members of their own choice—a right implicit in the freedom of association guaranteed by the First and Fourteenth Amendments of the Constitution. *See Rodriguez v. Popular Democratic Party,* 457 U.S. 1, 102 S.Ct. 2194, 72 L.Ed.2d 628 (1982); *Democratic Party of the United States v. Wisconsin,* 450 U.S. 107, 101 S.Ct. 1010, 67 L.Ed.2d 82 (1981); *Cousins v. Wigoda,* 419 U.S. 477, 95 S.Ct. 541, 42 L.Ed.2d 595 (1975).

The potential for interference with the State Democratic Party's ability to select the candidate of its members' choice is apparent from the statutory rules governing primary elections in Massachusetts. These rules provide that nomination papers for the primary ballot may be signed by 10,000 registered voters, whether or not they are enrolled party members, G.L. c. 53, § 46, and that both enrolled party members and unenrolled registered voters may vote in the primaries, as long as they enroll at the polls just before receiving ballots. G.L. c. 53, § 37. Thus, as was pointed out in *Langone v. Secretary of the Commonwealth,* 446 N.E.2d at 46:

> * * * if the only requirements for primary ballot access were the existing Massachusetts statutory requirements unaugmented by party rule, "a candidate for statewide election could be placed on the Democratic party ballot and win the primary, thus becoming entitled to be placed on the general election ballot as the Democratic party candidate, with little or no support from the regular party membership." *Id.* [*Opinion of the Justices to the Governor,*] 385 Mass. [1201] at 1205, 434 N.E.2d 960 [(1982)]. The Justices concluded that this would substantially infringe the Democratic party's right of freedom of association, *id.* at 1206, 434 N.E.2d at 960, and the Com-

monwealth's interest in the integrity of the election process does not constitutionally justify elimination of party control over who the party's candidate in the general election will be.

In that case, the Supreme Judicial Court of Massachusetts construed G.L. c. 53 as "not to exclude, but rather, to accommodate the 15 percent rule." 446 N.E.2d at 51.

Plaintiffs' interpretation of Article I, Section 4 also runs contrary to other decisions on the point, which have found it unobjectionable for state legislatures to delegate some of their regulatory authority over primary election balloting to state political parties. *Skeen v. Hooper,* 631 F.2d 707 (10th Cir.1980); *Tansley v. Grasso,* 315 F.Supp. 513 (D.Conn.1970); *Clark v. Rose,* 379 F.Supp. 73, 77 (S.D.N.Y.1974).

■ Accordingly, we hold that the 15 percent rule represents merely a rule promulgated by authority which has been delegated by the state legislature, and is in no way violative of Article I, Section 4 of the Constitution.

### IV.

Plaintiffs next argue that the application of the 15 per cent rule transgresses Article I, Section 3, Clause 3 of the Constitution in that it unlawfully adds a qualification for the office of United States Senator beyond the age, citizenship and residency requirements of the Constitution.

■ As the defendants have correctly pointed out, the 15 percent rule does not add a qualification that precludes Hopfmann from obtaining the office of United States Senator. The rule merely adds a restriction on who may run in the Democratic party primary for statewide political office and potentially become the party nominee. The cases cited by plaintiffs to the effect that neither Congress nor the states can add to the constitutional qualifications for office are inapposite. *Cf. Powell v. McCormack,* 395 U.S. 486, 547, 551,

89 S.Ct. 1944, 1977, 1979, 23 L.Ed.2d 491 (1969).

Unlike the additional requirements involved in the cases cited by plaintiffs, failure to comply with the 15 percent rule does not render a candidate ineligible for the office of United States Senator. An individual is free to run as the candidate of another party, as an independent, or as a write-in candidate. If he is elected and meets the requirements of Article I, Section 3, he will be qualified to take office. As the Wyoming Supreme Court stated in *State v. Crane*, 197 P.2d 864, 871 (Wyo. 1948), the test to determine whether or not the "restriction" amounts to a "qualification" within the meaning of Article I, Section 3, is whether the candidate "could be elected if his name were written in by a sufficient number of electors."

If plaintiffs' position were accepted, it would invalidate most of the state regulatory statutes, such as G.L. c. 53, which also restricts ballot access by requiring, among other things, that each candidate must submit nominating papers signed by at least 10,000 registered voters. Similar statutes have been upheld by the Supreme Court as an adjunct to the states' regulatory powers under the "time, place, and manner" clause of Article I, Section 4, in order to insure that "some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown*, 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974); *see also Rosario v. Rockefeller*, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973).

We therefore conclude that the 15 percent rule cannot be said to violate Article I, Section 3, Clause 3.

### V.

Plaintiffs' final contention is that the 15 percent rule violates the Seventeenth Amendment to the Constitution, which provides in pertinent part:

The electors in each State shall have the qualifications requisite for electors of the most numerous branch of the State legislatures.

Plaintiffs insist that the 15 percent rule contravenes this provision, because the rule applies only to candidates for statewide office, whereas the election of state representatives is not governed by the rule.

■ This contention was not raised below by plaintiffs, and is not properly before this court. *See Johnson v. Allyn & Bacon, Inc.*, 731 F.2d 64, 73 (1st Cir.1984); *Johnston v. Holiday Inns, Inc.*, 595 F.2d 890, 894 (1st Cir.1979).

However, if it is assumed *arguendo* that the contention is properly before us, we find that it is entirely lacking in merit. The 15 percent rule does not impose a qualification on voters for participation in elections for United States Senator which does not apply to voters in elections for representatives in the state legislature. As previously stated in this opinion, the 15 percent rule only imposes a restriction on those who wish to participate in the primary of the Democratic party and to obtain that party's nomination, whether they be candidates for the United States Senate or for the lower house of the state legislature. We repeat that any individual who fails to meet the requirements of or is dissatisfied with the 15 percent rule has the opportunity to run as a candidate of another party, as an independent, or to conduct a write-in campaign. *Forssenius v. Harman*, 235 F.Supp. 66 (E.D.Va.1964), relied on by plaintiffs, is inapposite. In that case, the state statute provided that no voter would be entitled to vote in any *federal* election unless he offered proof of continuing residence by filing a certificate in the time and manner prescribed by the state law.

AFFIRMED.