# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-30349

United States Court of Appeals
Fifth Circuit

**FILED**

May 12, 2015

Lyle W. Cayce
Clerk

ROGER PRICE,

Petitioner - Appellant

v.

WARDEN FORCHT WADE CORRECTIONAL CENTER,

Respondent - Appellee

Appeal from the United States District Court
for the Western District of Louisiana

Before JONES, CLEMENT, and PRADO, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

The district court denied petitioner-appellant Roger Price's ("Price's") application for a writ of habeas corpus. The district court also issued Price a certificate of appealability ("COA") pursuant to 28 U.S.C. § 2253. Price appeals, arguing that the state court judgment below violated the Ex Post Facto Clause of the U.S. Constitution. *See* U.S. Const. art. I, § 9, cl. 3 ("No Bill of Attainder or ex post facto Law shall be passed."). For the reasons explained below, we hold that Louisiana Revised Statutes § 15:571.4(B)(2) is void as applied to Price, whose crime occurred before its effective date. Accordingly, we REVERSE the judgment of the Louisiana Supreme Court and REMAND this case for further proceedings consistent with this opinion.

No. 14-30349

## FACTS AND PROCEEDINGS

Price was sentenced for armed robbery by a Louisiana court in 1985. At the time, an offender who violated his conditions of parole could forfeit no more than 180 days of good-time credit earned prior to his parole. *See* La. Rev. Stat. Ann. § 15:571.4(B)-(C) (1981). In 1997, Louisiana amended Section 15.571.4 so that an inmate who violated his parole conditions would forfeit *all* good-time credit earned prior to his parole. *See* 1997 La. Acts 1354 (codified as amended at La. Rev. Stat. § 15:571.4(B)(2)).[1] The State paroled Price in 2003. Price later violated his parole conditions, and the State revoked his parole. When calculating Price's new release date, prison officials applied Section 15.571.4, as amended in 1997, and determined that Price forfeited all good-time credit he had earned prior to his parole. After exhausting his administrative remedies, Price sought judicial review of the forfeiture determination in Louisiana state court.

A state court commissioner recommended that the state district court deny Price's appeal. *Reprinted in Price v. Michaels*, No. 2009 CA 1401, 2010 WL 502984, app. A, at *2 (La. Ct. App. Feb. 12, 2010). Price filed an objection to the commissioner's recommendation, citing *Greenfield v. Scafati*, 277 F. Supp. 644 (D. Mass. 1967) (three-judge panel), *aff'd mem.*, 390 U.S. 713 (1968) (per curiam). Both the state district court and intermediate appellate court adopted the commissioner's report and recommendation without mentioning Price's federal claims or relevant federal law. *See Price*, 2010 WL 502984. Price petitioned the Louisiana Supreme Court for supervisory review. The court

---

[1] The Louisiana legislature amended the statute in 1991, moving what was codified at Subsection C at the time of Price's sentencing to Subsection B, and breaking the material into separately numbered parts. Besides this organizational change, the 1991 changes are not relevant to our analysis.

denied his petition in a one-word order. *See Price v. Michaels*, 57 So. 3d 328 (La. 2011) (mem.).

Price filed a petition for writ of habeas corpus in federal district court under 28 U.S.C. § 2254, naming respondent-appellee the Warden of Forcht Wade Correctional Center (the "Warden") as defendant. The district court referred Price's petition to a federal magistrate judge, who reasoned that, because *Greenfield* was a summary affirmance, it had only "limited precedential value" and could not be treated as clearly established law under 28 U.S.C. § 2254(d)(1). *Reprinted in Price v. Warden, Forcht Wade Corr. Ctr.*, No. 11-cv-0386, 2014 WL 1270020, at *6 (W.D. La. Mar. 27, 2014). The district court adopted the magistrate judge's report and recommendation and denied Price's habeas petition. *Id.* at *1. It also granted Price's request for a COA. *Id.* Price appeals to this court *pro se*.

## DISCUSSION

### I.

### A.

When "a person in custody pursuant to the judgment of a State court" presents a claim in a federal habeas petition that "was adjudicated on the merits in State court,"[2] we lack the power to grant relief "unless the adjudication of the claim . . . resulted in a decision that was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court's decision is "contrary to

---

[2] In *Hoffman v. Cain*, 752 F.3d 430 (5th Cir. 2014), this court held that, where neither party rebuts the presumption that a summary opinion is "on the merits," the court was bound to "giv[e] the deference ordered by § 2254(d)." *Id.* at 439. The summary denial of supervisory review discussed in *Hoffman* is identical to the summary denial in this case, *compare id.* at 436 & n.20, *with Price*, 57 So. 3d at 328, and neither party rebuts the "on the merits" presumption. Accordingly, we presume that the Louisiana Supreme Court's decision was "on the merits" and give deference under § 2254(d).

No. 14-30349

. . . clearly established Federal law" if, *inter alia*, "the state court decides a case differently than th[e] [Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000).[3]

B.

"[A] summary affirmance by the Supreme Court is entitled to precedential weight. . . ." *SDJ, Inc. v. City of Houston*, 841 F.2d 107, 108 (5th Cir. 1988) (per curiam). Just as with the Court's other precedential opinions, lower courts should assume they "are bound by summary decisions . . . 'until such time as the Court informs (them) that (they) are not.'" *Hicks v. Miranda*, 422 U.S. 332, 344-45 (1975) (second and third alterations in original) (quoting *Doe v. Hodgson*, 478 F.2d 537, 539 (2d Cir. 1973)). Contrary to the magistrate judge's reasoning, then, summary affirmances "without doubt reject the specific challenges presented in the statement of jurisdiction" and "do prevent lower courts from coming to opposite conclusions on the precise issues presented and necessarily decided by those actions." *Mandel v. Bradley*, 432 U.S. 173, 176 (1977) (per curiam); *cf. Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 183 (1979) (distinguishing determinations that were "essential to sustain the judgment" from those that "'merely lurk in the record'" (quoting *Webster v. Fall*, 266 U.S. 507, 511 (1925))). Because summary affirmances "do[ ] not necessarily represent the Court's endorsement of the lower court's reasoning," we look primarily to the jurisdictional statement filed by the petitioner in the Supreme Court to determine what issues were presented and necessarily decided by the Court in its summary affirmance. *SDJ, Inc.*, 841 F.2d at 108. We also consider whether the facts presented in the former case are sufficiently analogous to those presented in the pending case.

---

[3] Although Price does not specify that he seeks relief under the "contrary to" standard, his appellate brief suggests that he seeks relief on that ground. Accordingly, we apply the "contrary to" standard.

4

No. 14-30349

*See Mandel*, 432 U.S. at 177 (explaining that the "precedential significance of the summary action . . . is to be assessed in the light of all of the facts in that case").

## II.

A law violates the Ex Post Facto Clause if it is "retrospective," that is, it "appl[ies] to events occurring before its enactment," and it "disadvantage[s] the offender affected by it." *Weaver v. Graham*, 450 U.S. 28, 29 (1981). The parties do not dispute that Section 571.4(B)(2) disadvantages Price. Accordingly, we need only determine whether the law is retrospective. Price argues that *Greenfield* controls this question. Considering the issues presented and necessarily decided in *Greenfield*, and finding that the facts in *Greenfield* are materially indistinguishable from the facts of this case, we agree with Price.

In *Greenfield*, a Massachusetts man was sentenced to prison at a time when Massachusetts law did not provide for the forfeiture of good-time credits for parole violations. *Greenfield*, 277 F. Supp. at 644-45.[4] After the prisoner was sentenced, the State enacted a law providing that a prisoner who violated his parole conditions could not earn good-time credits during the first six months after parole revocation. *Id*. at 645. "[R]ecognizing that there might be objections to retrospective application, the legislature made the provision prospective to the extent that it was not to apply to persons currently on parole. It did, otherwise, apply to persons already under sentence." *Id*. Though the prisoner was sentenced before the law was enacted, he "was paroled after [it] took effect, and upon his violation of parole and return to prison the statute was invoked." *Id*. As a result, the prisoner's release was "considerably delayed." *Id*.

---

[4] We refer to the lower court opinion to discern the relevant facts, but for the reasons explained above, not to consider the lower court's reasoning.

No. 14-30349

The Warden argues that no Supreme Court opinion clearly establishes that applying Louisiana's good-time forfeiture law to Price violated the Ex Post Facto Clause, because the application of the law was "triggered by misconduct committed by the petitioner after the new law [was] enacted." In *Greenfield*, the Massachusetts prison superintendent ("Superintendent") argued that Massachusetts's law was not retrospective because it was in effect before the prisoner was paroled, and "the relevant act [was] the [prisoner's] violation of the terms of his parole, and not the commission of the original offense." Jurisdictional Statement at *8-9, *Scafati v. Greenfield*, 390 U.S. 713 (1968) (No. 1104), 1968 WL 129215. By summarily affirming in *Greenfield*, the Court necessarily held that a good-time forfeiture law enacted after a prisoner's sentencing is retrospective, even if forfeiture is triggered by the parolee's post-enactment conduct.[5] Unless the particular facts presented in *Greenfield* render it inapplicable to this case, the rule in *Greenfield* is clearly established and controls here.

In *Greenfield*, the Superintendent argued that the prisoner "*knew* that, if he violated parole, he would not receive good-conduct deductions." Jurisdictional Statement, 1968 WL 129215, at *9 (emphasis added). The Warden emphasizes that Price *agreed* that if he violated his parole conditions, he would forfeit good-time credit. We recognize the factual difference between tacit and express agreement, but "[c]onduct may often convey as clearly as words a promise or an assent to a proposed promise." Restatement (Second) of Contracts § 19 cmt. a (1981). The Warden fails to explain why we should treat the prisoner's knowing acceptance of parole conditions by conduct in *Greenfield*

---

[5] *See also Weaver v. Graham*, 450 U.S. 24, 32 (1981) (citing *Greenfield* as "precedent" and explaining that changing good-time rules alters the effective sentence, even if those rules were not technically a part of the original sentence); *id.* at 37 (Blackmun, J. concurring) (citing *Greenfield* as "precedent" for the proposition that even good-time laws that apply "only prospectively" violate the Ex Post Facto Clause).

No. 14-30349

as materially different from Price's acceptance by contract. We hold that this factual difference does not make *Greenfield* inapplicable to this case.

Because *Greenfield* is materially indistinguishable, the rule established in *Greenfield* controls.[6] We hold that the state court's judgment was contrary to clearly established federal law as determined by the Supreme Court. Accordingly, we hold that Price is entitled to federal habeas relief under § 2254(d).

## CONCLUSION

For the reasons explained, we REVERSE the judgment of the Louisiana Supreme Court and REMAND this case for further proceedings consistent with this opinion.[7]

---

[6] It also follows that there are no arguments in support of the state court's judgment that could reasonably be viewed as consistent with the Supreme Court's holding in *Greenfield*. *See Williams v. Thaler*, 684 F.3d 597, 603 (5th Cir. 2012) (holding that, when state court enters judgment without a written opinion, courts must determine whether there are theories that could have supported the state court's judgment, and if so, whether those theories could be reasonably viewed as consistent with Supreme Court precedent).

[7] We recognize that, by denying Price's request for a supervisory writ, the Louisiana Supreme Court merely decided not to exercise its extraordinary powers of supervisory jurisdiction. *See State v. Fontenot*, 550 So. 2d 179, 179 (La. 1989) (per curiam), *cited in Hoffman*, 752 F.3d at 438 n.40. The Supreme Court has held that reversal and remand is the proper remedy even where the state supreme court simply chose not to exercise its discretionary, supervisory power. *See Weaver*, 450 U.S. 36 & n.22.