Joseph R. SKEEN, Phelps Anderson, Frank Salopek and Damon Weems, Plaintiffs–Appellants,

v.

Shirley HOOPER, Secretary of the State of New Mexico, Defendant–Appellee.

No. 80–1976.

United States Court of Appeals, Tenth Circuit.

Argued Oct. 1, 1980.

Decided Oct. 8, 1980.

Michael B. Browde, Albuquerque, N. M. (Hinkle, Cox, Eaton, Coffield & Hensley and Paul Kelly, Jr., Roswell, N. M., with him on brief), for plaintiffs–appellants.

Charles W. Daniels of Freedman, Boyd & Daniels, P.A., Albuquerque, N. M. (John S. Catron of Catron, Catron & Sawtell, Santa Fe, N. M., with him on brief), for defendant–appellee.

Before McWILLIAMS, BREITENSTEIN and DOYLE, Circuit Judges.

McWILLIAMS, Circuit Judge.

The only issue raised in this appeal is whether N.M.Stat.Ann. § 1–8–8(A) (Supp. 1979),[1] and the Secretary of State's action under that statute, wherein she declined to accept Joseph R. Skeen's certificate of candidacy and refused to place his name on the November 4, 1980, general election ballot as the Republican candidate for Congress from the Second Congressional District of the State of New Mexico, violate the United States Constitution. We conclude that there is no constitutional violation, and we therefore affirm the trial court's judgment.

In the primary election held on June 3, 1980, Representative Harold Runnels, the five–term Democratic incumbent, defeated his primary opponent, Gil M. Olguin, and thereby became the Democratic nominee for Congress from the Second Congressional District of the State of New Mexico. The Republican party did *not* nominate a candidate for the House of Representatives from the Second Congressional District of the State of New Mexico. So, it then appeared that Congressman Runnels, the Democratic nominee, or candidate, would be running unopposed in the general election to be held on November 4, 1980. However, on August 5, 1980, Congressman Runnels died. His death triggers the present controversy.

On August 23, 1980, both the Democratic and Republican State Central Committees met to select candidates for Congress from the Second District. The Democratic State Central Committee selected as its nominee David King, whose certificate of nomination was presented to, and accepted by, the Secretary of State, Shirley Hooper. The Republican State Central Committee selected as its candidate for Congress from the Second District Joseph R. Skeen. However, Skeen's certificate of nomination, when presented to the Secretary of State, was refused on the ground such was not permitted under the provisions of the New Mexico statute, set forth above by way of a footnote. That statute governs the filling of vacancies on a general election ballot occurring after a primary election. N.M.Stat. Ann. § 1–8–8(A) (Supp.1979).

It was in this setting that Skeen, and others, went to court. Skeen and three resident electors in the Second District, one a Republican, another a Democrat, and a third an Independent, brought suit in the United States District Court for the District of New Mexico. The action was brought against Shirley Hooper, the Secretary of State, and sought declaratory and injunctive relief. Specifically, one claim was that the Secretary had misconstrued the New

---

1. 1–8–8. Vacancy on general election ballot; occurring after primary.

    A. <u>If after a primary election a vacancy occurs, for any cause, in the list of nominees of a qualified political party for any public office to be filled in the general election,</u> or a vacancy occurs because of the resignation or death of a person holding a public office not included in the governor's proclamation and which office is required by law to be filled at the next succeeding general election, the vacancy on the general election ballot may be filled by:

    (1) the central committee of the state political party filing the name of its nominee for the office with the proper filing officer when such office is a federal, state, district or multi–county legislative district office; (Emphasis added.)

Mexico election statutes. The trial court upheld the Secretary's interpretation of N.M.Stat.Ann. § 1–8–8(A) (Supp.1979), and that ruling has *not* been appealed. However, the trial court also held that the provisions of N.M.Stat.Ann. § 1–8–8(A) (Supp. 1979), and the actions of the Secretary pursuant to that statute, did not violate any of the plaintiffs' constitutional rights. That particular ruling was appealed, and, as indicated, is the only matter urged to this Court.

The United States Constitution, Article I, Section 2, Clause 1, provides that members of the House of Representatives shall be chosen every second year by the people of the several states, and that the electors in each state shall have the qualifications required for electors of the most numerous branch of the state legislature. Article I, Section 4, Clause 1 provides that the times, places and manner of holding elections for United States Senators and Representatives shall be prescribed in each state by the legislature thereof.

The claim of the appellants in this Court is essentially that N.M.Stat.Ann. § 1–8–8(A) (Supp.1979), as that statute has been applied to them by the Secretary of State, is unconstitutional in that it violates Article I, Section 2, Clause 1 of the United States Constitution, and the First and Fourteenth Amendments to the Constitution by denying Skeen access to the general election ballot, and by denying the other appellants equal protection of the laws and the right to associate for political purposes, and by burdening their right to cast a meaningful and effective vote. As indicated at the outset, we are not persuaded by this broad–scaled challenge to the New Mexico statute, and we reject the suggestion that the people of the Second District will not be selecting their Congressman in the forthcoming general election.

N.M.Stat.Ann. § 1–8–8(A) (Supp.1979), here under attack, should be viewed in its statutory context.[2] Under New Mexico law all nominations by political parties of candidates for public office must be made pursuant to its Election Code. N.M.Stat.Ann. § 1–7–1 (1978). Any major political party in New Mexico must nominate its candidates by secret ballot at a primary election. N.M.Stat.Ann. § 1–8–1 (1978). A major party candidate for United States Representative may have his name placed on the primary election ballot by receiving a certificate of designation by his state party convention. N.M.Stat.Ann. § 1–8–21(A) (1978). In order for a would–be New Mexico candidate for Congress to be considered by his state party convention he or she must file, within a specific time prior to the state convention, a declaration of candidacy for convention designation, accompanied by a nominating petition. N.M.Stat.Ann. § 1–8– 22 through § 1–8–38 (1978 and Supp.1979).

Against this statutory backdrop, we review, again, the sequence of events leading to the present controversy, which events are not in dispute. Congressman Runnels and Gil M. Olguin made timely filing of their respective declarations of candidacy. Each received a designation at their party convention, and the name of each appeared on the primary ballot. By winning the primary contest, Congressman Runnels became the Democratic party candidate for Congress. The Republican party, in contrast, held no primary election for Congress for the Second District, because no one filed a declaration of candidacy for that office, as required by New Mexico statute. As indicated, it was in this setting, i. e., Congressman Runnels was an unopposed candidate for Congress from the Second District, that he died on August 5, 1980.

In arguing for reversal, counsel states that this is a unique case, unlike any other reported case, and he would apply, by analogy, the reasoning of cases relating to malapportionment and residency requirements. See, for example, *White v. Weiser*, 412 U.S. 783, 93 S.Ct. 2348, 37 L.Ed.2d 335 (1973); *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); *Wells v. Rockefeller*, 394 U.S. 542, 89 S.Ct. 1234, 22

---

**2.** We are advised that many states have statutory provisions quite similar to N.M.Stat.Ann. § 1–8–8(A) (Supp.1979). In this regard, see the Appendix to this opinion.

L.Ed.2d 535 (1969); and *Wesberry v. Sanders*, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964). We do not believe the present case is in reality analogous to those cases, and feel that *Storer v. Brown*, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974), for example, is more helpful.

In *Storer*, the Supreme Court upheld a provision of the California Election Code which forbids a ballot position to an independent candidate for elective public office if he had a registered affiliation with a qualified political party within one year prior to the immediate preceding primary election. Storer was a would–be Independent Candidate for Congress. In upholding the California statute, the Supreme Court, in *Storer*, made the following comment, which we set forth at length because we believe it has particular present pertinency:

In challenging § 6830(d) (Supp.1974), appellants rely on *Williams v. Rhodes* and assert that under that case and subsequent cases dealing with exclusionary voting and candidate qualifications, e. g., *Dunn v. Blumstein*, 405 U.S. 330 [92 S.Ct. 995, 31 L.Ed.2d 274] (1972); *Bullock v. Carter*, 405 U.S. 134 [92 S.Ct. 849, 31 L.Ed.2d 92] (1972); *Kramer v. Union Free School District*, 395 U.S. 621 [89 S.Ct. 1886, 23 L.Ed.2d 583] (1969), substantial burdens on the right to vote or to associate for political purposes are constitutionally suspect and invalid under the First and Fourteenth Amendments and under the Equal Protection Clause unless essential to serve a compelling state interest. These cases, however, do not necessarily condemn § 6830(d) (Supp.1974). *It has never been suggested that the Williams–Kramer–Dunn rule automatically invalidates every substantial restriction on the right to vote or to associate.* Nor could this be the case under our Constitution where the States are given the initial task of determining the qualifications of voters who will elect members of Congress. Art. I, § 2, cl. 1. Also Art. I, § 4, cl. 1, authorizes the States to prescribe "[t]he Times, Places and Manner of holding Elections for Senators and Representatives." *Moreover, as a practical matter,*

*there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.* In any event, the States have evolved comprehensive, and in many respects complex, election codes regulating in most substantial ways, with respect to both federal and state elections, the time, place, and manner of holding primary and general elections, the registration and qualifications of voters, and the selection and qualification of candidates.

It is very unlikely that all or even a large portion of the state election laws would fail to pass muster under our cases; and the rule fashioned by the Court to pass on constitutional challenges to specific provisions of election laws provides no litmus–paper test for separating those restrictions that are valid from those that are invidious under the Equal Protection Clause. The rule is not self–executing and is no substitute for the hard judgments that must be made. Decision in this context, as in others, is very much a "matter of degree," *Dunn v. Blumstein, supra,* [405 U.S.] at 348, [92 S.Ct. at 1006], very much a matter of "consider[ing] the facts and circumstances behind the law, the interests which the State claims to be protecting, and the interests of those who are disadvantaged by the classification." *Williams v. Rhodes, supra,* [393 U.S.] at 30 [89 S.Ct. at 10]; *Dunn v. Blumstein, supra,* [405 U.S.] at 335, [92 S.Ct. at 999]. What the result of this process will be in any specific case may be very difficult to predict with great assurance. (Emphasis added.) 415 U.S. at 729–30, 94 S.Ct. at 1278–79.

With the general election date of November 4, 1980, fast approaching, it is apparent that it is highly desirous that a speedy resolution of the present appeal be made, consonant, of course, with a careful consideration of the numerous authorities cited by counsel, even though the press of time will not permit an in–depth consideration, in this opinion, of all the numerous election cases that conceivably have bearing on the

present one.[3] It is sufficient to state that, in our view, none of the authorities, to date, support the grant of relief here sought by the appellants. Rather, the appellants' request would extend the principles enunciated in previous election cases further than they were originally intended. We find that such cases as *Storer v. Brown*, 415 U.S. 724, 94 S.Ct. 274, 39 L.Ed.2d 714 (1974); *American Party of Texas v. White*, 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974); *Rosario v. Rockefeller*, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973); and *Jenness v. Fortson*, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971), have greater applicability to the facts of the instant case than do the cases involving malapportionment, exclusionary voting and candidate qualifications.

In short, we believe that the statute here in question, as interpreted and applied by the Secretary, does meet the strict scrutiny test, and that it serves a compelling state interest. See *Bullock v. Carter*, 405 U.S. 134, 142–44, 92 S.Ct. 849, 855–56, 31 L.Ed.2d 92 (1972) and *Kramer v. Union Free School District*, 395 U.S. 621, 627–630, 89 S.Ct. 1886, 1889, 91, 23 L.Ed.2d 583 (1969). The State's interest is to make certain that elections in New Mexico will be conducted in a fair, honest and orderly fashion, unaccompanied by chaos, even when officials are confronted by a sudden change of events. Such compelling state interest justifies whatever restraint there may be of Skeen's right to have his name appear on the general election ballot and the correlative right of the other appellants to vote for Skeen. In this latter regard, Skeen, of course, has the right to wage a write–in campaign. Though write–in campaigns are generally a difficult thing, the Supreme Court, in *Jenness v. Fortson*, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971), appears to recognize that there will be instances in which a candidate for elective office may constitutionally be limited to a write–in candidacy. The Supreme Court in *Jenness* noted that the statutory scheme there involved "freely provides for write–in votes," 403 U.S. at 438, 91 S.Ct. at 1974, as does, we note, the New Mexico Election Code. N.M.Stat.Ann. § 1–12–19 (Supp.1979). The Supreme Court's comment in *Jenness* bears repeating here:

It is to be noted that these [statutory] procedures relate only to the right to have the name of a candidate or the nominee of a "political body" printed on the ballot. There is no limitation whatever, procedural or substantive, on the right of a voter to write in on the ballot the name of the candidate of his choice and to have that write–in vote counted. 403 U.S. at 434, 91 S.Ct. at 1972.

Our independent research of the matter indicates that the reported case which perhaps has facts most similar to those of the instant case is *Tolpo v. Bullock*, 356 F.Supp. 712 (1972), *aff'd without opinion*, 410 U.S. 919, 93 S.Ct. 1370, 35 L.Ed.2d 582 (1973). In *Tolpo*, heard by a three–judge court, an incumbent Democratic state legislator who had filed for re–election died prior to the Democratic primary. No Republican had filed for the particular office, and the statutory deadline for filing had expired. When the Democrat who had timely filed died, *both* parties attempted to avail themselves of a Texas election statute which extended the time for filing some fifteen days following the death of a candidate. The Texas statute clearly limited an extension of the filing deadline to the party whose nominee, or candidate, had died, and did not permit a party which had no candidate to reopen and extend the filing deadline. In this setting, a would–be Republican candidate brought suit, contending that the Texas statute was violative of the Fourteenth Amendment. The three–judge court in *Tolpo* held that the statute did not deny equal protection. We recognize that *Tolpo* involved a state office, whereas the instant case involves a Congressional office. However, *Tolpo* does stand for the proposition that a statute permitting a reopening and extension of the

---

3. Notice of appeal was filed on September 17, 1980, and on September 19, 1980, this Court, on motion, expedited the appeal process.

Briefing was completed on September 29, 1980, and oral argument was held on October 1, 1980.

filing deadline when a political party's candidate dies prior to election, and, at the same time, not allowing an opposing political party which, though initially afforded the opportunity to nominate a candidate, has failed through inaction to field a candidate, to similarly reopen, is non–violative of the Fourteenth Amendment.

Judgment affirmed.

### APPENDIX

We are advised that the state election codes in some 45 states, and in the District of Columbia, contain replacement provisions which are, in all material respects, the same as those found in New Mexico's election laws. In two states, Louisiana and Mississippi, no replacement appears to be allowed. In two other states, Vermont and West Virginia, a party which has failed to nominate a candidate in a primary election may thereafter treat the omission as a vacancy and select a candidate. In one state, Kansas, the statutes provide that all parties may designate a candidate in the event of the death of an unopposed candidate.