**Sa'ad EL–AMIN, et al, Plaintiffs,**

v.

**STATE BOARD OF ELECTIONS, COMMONWEALTH OF VIRGINIA, et al., Defendants.**

Civ. A. No. 89–00392–R.

United States District Court,
E.D. Virginia,
Richmond Division.

Sept. 28, 1989.

Sa'ad El–Amin, Richmond, Va., pro se.

William H. Hauser, K. Marshall Cook, Sr. Asst. Attys. Gen. and Greg Haley, Asst. Atty. Gen., Richmond, Va., for defendants.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

This matter is presently before the Court on plaintiffs' Second Amended Complaint and Motion for Summary Judgment, pursuant to Fed.R.Civ.P. 56. Plaintiff El–Amin seeks reinstatement of his name on the November ballot in the election of office of Commonwealth's Attorney for the City of Richmond, Virginia. Defendants filed a Motion to Dismiss plaintiffs' claims for failure to state a claim on which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6); in accordance with Fed.R.Civ.P. 12(b), this Court shall treat defendants' Motion as a cross-motion for summary judgment. Both parties agree that there is no genuine issue of material fact in dispute; the only question which remains is which side is entitled to judgment as a matter of law.

### I. *Background*

Plaintiff Sa'ad El–Amin on or about April 3, 1989, formally announced his candidacy as an independent for the Office of Commonwealth's Attorney for the City of Richmond ("Commonwealth's Attorney"). He failed to submit a financial disclosure statement prior to the required statutory deadline in accordance with Virginia Code § 24.1–167 ("§ 24.1–167"). A 1988 amendment to that statute eliminated the State Board of Elections' authority to grant extensions. Mr. El–Amin was thus denied an extension pursuant to § 24.1–167, and he was accordingly disqualified.

In his Original and First Amended Complaint, Mr. El–Amin challenged the constitutionality of § 24.1–167. This Court held on August 7, 1989, that § 24.1–167 was constitutional and that it did not deny individuals equal access to the ballot (*see El–Amin v. State Bd. of Elections*, 717 F.Supp. 1138 (E.D.Va.1989)), and on Au-

gust 25, 1989, the Court denied plaintiffs' motion for reconsideration.

On September 1, 1989, Judge D.W. Murphy sitting by designation in the Circuit Court of the City of Norfolk ruled that pursuant to Virginia Code § 24.1–110 ("§ 24.1–110"), a political party is authorized to nominate a "new candidate" if the original candidate dies or withdraws after expiration of the time for qualifying. *Norfolk City Democratic Committee v. State Board of Elections*, Ch. No. 89–1175 (1989). The only limitation on the renomination of a candidate is Virginia Code § 24.1–197 ("§ 24.1–197"), which disallows the nomination of a candidate whose nomination has been set aside for fraud. Thus, with the exception of those candidates falling under § 24.1–197, a disqualified candidate may be renominated by his party. The Norfolk ruling permitted the Democratic Party to renominate two of its candidates [1] who had been disqualified and withdrew. Following the circuit court ruling, the Attorney General of Virginia extended the Norfolk court's interpretation to "like situation[s]." The State Board of Elections then authored a series of letters advising city and county clerks to permit the renomination of candidates in situations where party candidates had withdrawn.

In his Second Amended Complaint, Plaintiff El–Amin asserts that as an independent candidate, he is denied the benefit of § 24.1–110. As applied by the Norfolk Circuit Court, § 24.1–110 operates to allow political parties to renominate candidates who have withdrawn. Once a party candidate has withdrawn and his party renominates another candidate, then all other parties and nonparties are permitted to nominate candidates. The inequality of the statute, according to Mr. El–Amin, is that independents are deprived of the full benefits of § 24.1–110. The withdrawal of an independent candidate does not trigger the § 24.1–110 mechanism. Only if a party candidate withdraws is an independent allowed to reap the derivative benefit. The practical effect of the statute is to ensure parties that their candidates will always be able to run in an election, even if their original candidate was disqualified. A further effect of the statute is to nullify § 24.1–167 requirements for party candidates. In short, although § 24.1–167 prohibits the granting of extensions to candidates who fail to file their financial disclosure statements, the operation of § 24.1–110 creates an extension or second chance for party candidates who have the good fortune to be renominated by their parties.[2] In contrast, independents or other nonparty candidates who are disqualified and withdraw are deprived of this second chance, unless a party candidate withdraws and his party renominates another candidate.

Mr. El–Amin argues that he cannot reap the benefits of § 24.1–110 as have other party candidates who also failed to file financial disclosure reports. Because no party candidate for the position of Commonwealth's Attorney in the City of Richmond withdrew, no party needed to renominate a candidate. Thus the mechanism which would have allowed Mr. El–Amin to resubmit his name for the ballot was not triggered.

As a consequence of this allegedly unequal operation of the statute, Mr. El–Amin asserts violations of his constitutional rights under the First and Fourteenth Amendments to the United States Constitution and seeks declaratory and injunctive relief, pursuant to 28 U.S.C. §§ 1343, 2201, 2202, and 42 U.S.C. §§ 1983 and 1988.

## II. *Motion to Dismiss*

■ Defendants have moved this Court to dismiss the Second Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted. On a motion to dismiss, dismissal is not warranted "unless it appears to a certainty

---

1. Those candidates were running in different elections than the one concerning plaintiff El–Amin.

2. Even without such good fortune, a disqualified party candidate, not renominated by his party, could theoretically renominate himself as an independent when the renomination period opened up because of his withdrawal.

that the [non-moving party] would be entitled to no relief under any state of facts which could be proven in support of its claim." *Adams v. Bain*, 697 F.2d 1213, 1216 (4th Cir.1982).

Under *Adams*, it is clear that dismissal is not appropriate in this case. Based on the plaintiffs' Second Amended Complaint and arguments heard at a hearing on plaintiffs' Motion for Reconsideration of Judgment, it is not certain that plaintiffs would not be entitled to relief. On the contrary, it appears that plaintiffs are entitled to relief. Since, however, matters outside the pleadings have been presented and accepted by the Court without objection, in accordance with Rule 12(b) of the Federal Rules of Civil Procedure, this Motion shall hereafter be treated as one for summary judgment and be disposed of as provided for in Rule 56 of the Federal Rules of Civil Procedure.

### III. *Summary Judgment*

The Court now turns to plaintiffs' Motion for Summary Judgment and defendants' Cross–Motion for Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Supreme Court made clear in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) that a trial judge shall grant summary judgment if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law. *Id.* 477 U.S. at 250, 106 S.Ct. at 2511. In ruling on a motion for summary judgment, "the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Id.* at 254, 106 S.Ct. at 2513.

In this case, plaintiffs claim that their First and Fourteenth Amendment rights have been injured. Both sides have stipulated to the facts and agree that they are not in dispute. In order to determine if plaintiffs are entitled to prevail, we must look to the substantive evidentiary burdens established to protect those rights.

### Constitutional Protections

 Although at first glance this case does not appear to raise an access-to-ballot claim, the operation of § 24.1–110 effectively makes it such a case. The Supreme Court and the Fourth Circuit have analyzed state laws restricting ballot access under varying levels of scrutiny. Thus, the first issue which must be resolved before proceeding is which standard of review is appropriate. Under traditional equal protection analysis, states are given considerable latitude in enacting their laws. Distinctions are permissible if they bear some rational relationship to a legitimate state end. Departure from traditional equal protection principles is appropriate only when a fundamental right is at stake or burdens are placed upon suspect classifications.

The Supreme Court has departed from traditional equal protection analysis in two lines of ballot access cases. One species involves classifications based on wealth; the other, involves classifications schemes imposing burdens on new or small political parties or independent candidates. In the latter case, the Supreme Court has also considered how such burdens have affected candidates' and voters' First Amendment interests in ensuring freedom of association. Most recently, the Supreme Court and the Fourth Circuit have focused not on the interest of the candidate, but rather, on the interests of the voters who choose to associate together to express their support for the candidate and the views s/he represents. *Eu v. San Francisco Democratic Com.*, 489 U.S. ——, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989); *Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983); *Dixon v. Md. State Administrative Election Laws*, 878 F.2d 776 (4th Cir.1989).

Stricter scrutiny is particularly appropriate when Fourteenth Amendment equal protection claims involve non-party or independent candidates' and their supporters' First Amendment rights to freedom of association. The Supreme Court has identified as suspect those laws directed at aspirants for office that tend to "limit the field of candidates from which voters might choose." *Bullock v. Carter*, 405 U.S. 134, 143, 92 S.Ct. 849, 856, 31 L.Ed.2d 92 (1972); *Anderson v. Celebrezze*, 460 U.S. at 786, 103 S.Ct. at 1568–1569; *Dixon*, 878 F.2d at 779. Such laws are considered suspect be-

cause they impose restrictions on the fundamental right to vote. Moreover, the exclusion of candidates from the playing field burdens voters' freedom of association. *Anderson v. Celebrezze*, 460 U.S. at 787–88, 103 S.Ct. at 1569–70. This is especially true when nonmainstream political parties or independents are excluded. Thus, "[i]n approaching candidate restrictions, it is essential to examine in a realistic light the extent and nature of their impact on voters."[3] *Bullock*, 405 U.S. at 143, 92 S.Ct. at 856.

The nature and extent of the impact that a ballot restriction may have on voters depends, obviously, on the mechanics of the restriction, itself, and on whether and, if so, how it affects a particular segment of the voting population. As the Supreme Court noted in *Anderson*, "because the interests of minor parties and independent candidates are not well represented in state legislatures, the risk that the First Amendment rights of those groups will be ignored in legislative decisionmaking may warrant more careful judicial scrutiny.[4] 460 U.S. at 793 n. 16, 103 S.Ct. at 1572 n. 16.

The Supreme Court has also recognized the importance of balancing this right against the states' interest in keeping elections fair, honest, and orderly. *Storer v. Brown*, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974). A state's "important regulatory interests are generally sufficient to justify reasonable and nondiscriminatory restrictions." *Anderson*, 460 U.S. at 788, 103 S.Ct. at 1570.

Thus, there are numerous factors which a court must consider before invoking heightened scrutiny. In *Anderson*, the Supreme Court set forth specific factors to consider in balancing these interests:

> Constitutional challenges to specific provisions of a State's election laws ... cannot be resolved by any 'litmus-paper test' that will separate valid from invalid restrictions.... It must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it must also consider the extent to which those interests make it necessary to burden the plaintiff's rights.

*Anderson*, 460 U.S. at 789, 103 S.Ct. at 1570.

Most recently, the Supreme Court in *Eu v. San Francisco* ruled that to "assess the constitutionality of a state election law, we must first examine whether it burdens rights protected by the First and Fourteenth amendments." *Eu v. San Francisco*, 489 U.S. at ——, 109 S.Ct. at 1019. The Supreme Court went on to state the test of constitutionality: "If the challenged law burdens the rights of political parties and their members, it can survive constitutional scrutiny only if the State shows that it advances a compelling state interest, ..., and is narrowly tailored to serve that interest." *Id.*[5]

It appears that the Fourth Circuit has followed the Supreme Court's focus on First Amendment analysis in assessing the constitutionality of state election laws.

**3.** The Supreme Court has suggested that the right to be a candidate for public office may not be a fundamental right in and of itself and may be subject to some degree of regulation. *Bullock*, 405 U.S. at 142–43, 92 S.Ct. at 855–56. It has, however, also acknowledged that the rights of voters and the rights of candidates do not lend themselves to neat separation. *Id.*

**4.** Plaintiffs have alleged that one interesting fact behind the law to take into consideration is that the election statutes were passed by those in office who are also party affiliates. Although the operation of the statute at issue clearly favors party candidates, this Court finds no evidence of Machiavellian strategies or invidious intent by party incumbents.

**5.** A "[s]tate's broad power to regulate the time, place, and manner of elections 'does not extinguish the [s]tate's responsibility to observe the limits established by the first amendment rights of the [s]tate's citizens.'" 489 U.S. ——, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989), quoting *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 217, 107 S.Ct. 544, 550, 93 L.Ed.2d 514 (1986).

774

*Dixon*, 878 F.2d at 776; *Libertarian Party of Va. v. Davis*, 766 F.2d 865 (4th Cir.1985). Therefore, in order to determine the appropriate level of scrutiny to apply, the test in *Anderson* must be applied to the facts of this case.

### 1. *Character and Magnitude of the Injury*

In ballot access cases the level of scrutiny required depends on the degree to which the challenged restrictions operate as a mechanism to exclude certain classes of candidates from the electoral process. *Anderson*, 460 U.S. at 793, 103 S.Ct. at 1572. "The inquiry is whether the challenged restriction *unfairly* or *unnecessarily* burdens the availability of political opportunity." *Clements v. Fashing*, 457 U.S. 957, 963–64, 102 S.Ct. 2836, 2843–44, 73 L.Ed.2d 508 (1982) (emphasis added).

This case involves a classification scheme which imposes a burden on independent and nonparty candidates. A departure from traditional equal protection analysis is warranted if the statute severely burdens the non-mainstream party candidates' and their supporters' rights to associate for political purposes and to vote effectively. In such instances the discriminatory aspects of a law must be justified by compelling state interests. *Storer v. Brown*, 415 U.S. 724, 728, 94 S.Ct. 1274, 1278, 39 L.Ed.2d 714 (1974).

This Court has already ruled that § 24.1–167, alone, does not violate Mr. El-Amin's First or Fourteenth Amendment rights. The operation of § 24.1–110, however, perturbs the neutrality of § 24.1–167. Section 24.1–110 allows a party to renominate a "new candidate" if its original candidate dies or withdraws after the expiration of time for qualifying. Selection of the "new candidate" is limited only by Virginia Code § 24.1–197, which prohibits the nomination of a candidate involved in fraudulent activity. In short, a party could renominate the candidate who initially withdrew. Upon the party's renomination of a new candidate, other parties and nonparties are permitted to nominate candidates. The renomination process can only be triggered

by the death or withdrawal of a party candidate and that party's renomination of a "new candidate." The death or withdrawal of an independent or nonparty candidate does not trigger the renomination mechanism. As such, the statute bestows a benefit on political parties which is not available to independent or nonparty candidates.

More unsettling than the discriminatory operation of the statute is its ultimate effect on § 24.1–167 requirements for party candidates. Because a party candidate who fails to meet the requirements of § 24.1–167 and is disqualified may be renominated by his party, that candidate, in essence, is given a second chance to fulfill § 24.1–167 requirements. Thus, § 24.1–167 and the prohibition against granting extensions to meet those requirements are repealed for party candidates. They may neglect their § 24.1–167 filing requirements and still have a second chance to get their names on the ballots, either through party renomination or by proceeding as an independent candidate. In contrast, independent and nonparty candidates must abide by the rigors of § 24.1–167 unless a party candidate withdraws. Thus, the effect of § 24.1–110 on § 24.1–167 impermissibly burdens a particular segment of the electorate by making access to the ballot more difficult for independent and nonparty candidates.

The repeal of § 24.1–167 for party candidates by the operation of § 24.1–110 raises the issue of whether nonparty and independent candidates like Mr. El-Amin and the voters they represent have equal acess to the ballot. Since § 24.1–167 requirements are strictly applicable to nonparty and independent candidates, but not applicable to party candidates, the former candidates and their supporters are denied equal access to the ballot. "A burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment." *Anderson*, 460 U.S. at 793, 103 S.Ct. at 1572. For the above-stated reasons, the filing requirements of § 24.1–167 are tainted by the operation of § 24.1–110, and as

such, they unreasonably restrict access to the ballot for independent candidates.

## 2. *State's Interests*

Both parties admit to the fact that § 24.1–110 operates to favor political party organizations. Defendants maintain, however, that the state has a legitimate interest in protecting the institutional integrity of political parties. The state cites several cases where the federal courts have upheld the constitutionality of nomination vacancy statutes. Both *Skeen v. Hooper,* 631 F.2d 707 (10th Cir.1980) and *Tolpo v. Bullock,* 356 F.Supp. 712 (E.D.Tex.1972) are distinguishable because the statutes in those cases did not disadvantage minority political associations. Those cases involved statutes which allowed one party to reopen and extend a filing deadline when its candidate died, but did not allow the opposing party to reopen its deadline.

Because of the character and magnitude of the constitutional injury at issue, and because of the discriminatory operation of the statute, strict scrutiny is appropriate in this case. The state's interest in preserving the institutional well-being of political parties is not a compelling interest in this case. In *Williams v. Rhodes,* the Supreme Court squarely held that protecting the Republican and Democratic Parties from external competition cannot justify the virtual exclusion of other political aspirants from the political arena. 393 U.S. 23, 31–32, 89 S.Ct. 5, 10–11, 21 L.Ed.2d 24 (1968). While "virtual exclusion" is not at issue here, the unevenhanded operation of § 24.1–110 compromises the integrity and reliability of the electoral process.

Even if the state's interest were compelling, the statute is not narrowly tailored to serve that interest as is required by *Eu v. San Francisco,* 489 U.S. at ——, 109 S.Ct. at 1020. A more narrowly tailored and fairer statute would allow the withdrawal of an independent candidate to trigger the renomination process and would prohibit the renomination of a disqualified candidate. Without the latter qualification, § 24.1–167 would be a mockery. Party candidates and independents, alike, would be able to undermine the filing requirements. As it currently operates, § 24.1–110 allows party candidates to maneuver around § 24.1–167 filing requirements. Thus, the incoherent effect of § 24.1–110 on § 24.1–167 makes it impossible for § 24.1–110 to survive a strict scrutiny or a rational basis test.

## IV. *Conclusion*

The Court thus concludes that as a matter of law, § 24.1–110 unfairly and unnecessarily burdens independent candidates in contravention to the First and Fourteenth amendments of the United States Constitution.

For these reasons, plaintiffs' Motion for Summary Judgment is GRANTED and defendants' crosss-motion is DENIED.

It is so ORDERED.