[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 12, 2000
THOMAS K. KAHN
CLERK

_____

No. 99-10798

_____

D. C. Docket No. 98-01938-CV-S-NE

SHERRI WILLIAMS, B. J. BAILEY, et al.,

Plaintiffs-Appellees,

versus

BILL PRYOR, in his official capacity
as the Attorney General of the State of Alabama,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(October 12, 2000)**

Before ANDERSON, Chief Judge, BLACK and HALL[*], Circuit Judges.

BLACK, Circuit Judge:

_____

[*] Honorable Cynthia Holcomb Hall, U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

In 1998, a statute enacted by the legislature of the State of Alabama amended the obscenity provisions of the Alabama Code to make the distribution of certain defined sexual devices a criminal offense. Vendors and users of such devices filed a constitutional challenge to the statute. The district court declined to hold the statute violated any constitutional right but determined the statute was unconstitutional because it lacked a rational basis. The court permanently enjoined enforcement of the statute. We reverse and remand.

## I. BACKGROUND

The case was tried by the district court from the parties' extensive stipulated facts, reprinted in full in the district court's published opinion. *See Williams v. Pryor*, 41 F. Supp. 2d 1257, 1261-1273 (N.D. Ala. 1999).

After the 1998 amendment, the Alabama Code obscenity provisions provide, in pertinent part, the following:

> It shall be unlawful for any person to knowingly distribute, possess with intent to distribute, or offer or agree to distribute any obscene material *or any device designed or marketed as useful primarily for the stimulation of human genital organs* for any thing of pecuniary value.

*Id*. at 1259 (quoting Ala. Code § 13A-12-200.2(a)(1) (Supp. 1998)).[2]  A first

---

[2] We adopt the district court's usage of the shorthand term "sexual device" in place of the cumbersome phrase "device designed or marketed as useful primarily for the stimulation of the human genital organs."

violation is a misdemeanor punishable by a maximum fine of $10,000 and up to one year of jail or hard labor; a subsequent violation is a class C felony. *See id.* The State has conceded the statute's proscription of the distribution of sexual devices in Alabama does not apply to devices acquired as gifts or by purchases in another state. *See id.* at 1265. The statute also does not restrict possession or use of a sexual device by an individual, but only the commercial distribution of the devices. *See id.*

The plaintiffs-appellees are vendors or users of sexual devices. *See id.* at 1261-65. The stipulated facts contain two expert opinions that describe the standard medical and psychological therapeutic uses of sexual devices, including their frequent prescription in marital and non-marital sexual or relationship counseling—often as a necessary component for successful therapy. *See id.* at 1265-73. The facts also describe a number of other sexual products the distribution of which is not prohibited by the statute, such as ribbed condoms or the virility drug Viagra. *See id.* at 1265.

The district court performed a careful evaluation of the plaintiffs' constitutional challenges. After considering Supreme Court precedent, the court determined the statute does not implicate previously recognized fundamental constitutional rights. *See id.* at 1275-84. The court also declined to extend those

3

rights to provide a fundamental right to the use of sexual devices, a right that would be burdened by the statute. *See id.* The district court next reviewed the statute under rational basis scrutiny and concluded the statute lacked a rational basis. *See id.* at 1284-1293. The court accordingly held the statute unconstitutional and issued a permanent injunction against its enforcement. *See id.* at 1293.

We review de novo the district court's decision on the constitutionality of a statute. *See, e.g.*, *Mason v. Florida Bar*, 208 F.3d 952, 955 (11th Cir. 2000); *David Vincent, Inc. v. Broward County*, 200 F.3d 1325, 1335 (11th Cir. 2000); *United States v. Hester*, 199 F.3d 1287, 1289 (11th Cir. 2000).

## II. ANALYSIS

Whether a statute is constitutional is determined in large part by the level of scrutiny applied by the courts. Statutes that infringe fundamental rights, or that make distinctions based upon suspect classifications such as race or national origin, are subject to strict scrutiny, which requires that the statute be narrowly tailored to achieve a compelling government interest. *See, e.g.*, *Reno v. Flores*, 507 U.S. 292, 301-02, 113 S. Ct. 1439, 1447 (1993); *Adarand Constructors v. Pena*, 515 U.S. 200, 227, 115 S. Ct. 2097, 2113 (1995). Most statutes reviewed under the very stringent strict scrutiny standard are found to be unconstitutional. *But see United*

4

*States v. Virginia*, 518 U.S. 515, 532 n.6, 116 S. Ct. 2264, 2275 n.6 (1995) ("strict scrutiny . . . is not inevitably fatal in fact") (quotation omitted). On the other hand, "if a law neither burdens a fundamental right nor targets a suspect class, we will uphold the [law] so long as it bears a rational relation to some legitimate end." *Romer v. Evans*, 517 U.S. 620, 632, 116 S. Ct. 1620, 1627 (1996); *see also, e.g.*, *Washington v. Glucksberg*, 521 U.S. 702, 728, 117 S. Ct. 2258, 2271 (1997); *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 314, 113 S. Ct. 2096, 2101 (1993). Almost every statute subject to the very deferential rational basis scrutiny standard is found to be constitutional. *Cf., e.g.*, *Panama City Med. Diag. Ltd. v. Williams*, 13 F.3d 1541, 1546-47 (11th Cir. 1994) (discussing "arguable" rational bases for statute). We consider first the district court's determination that the statute is unconstitutional because it fails rational basis scrutiny.

A.  Rational Basis Review

Rational basis scrutiny is a highly deferential standard that proscribes only the very outer limits of a legislature's power.  A statute is constitutional under rational basis scrutiny so long as "there is *any reasonably conceivable state of facts that could provide a rational basis for the*" statute.  *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 314, 113 S. Ct. 2096, 2101 (1993) (emphasis added).  The Supreme Court has explained that:

> Where there are plausible reasons for Congress' action, our inquiry is at an end.  This standard of review is a paradigm of judicial restraint. . . .
>
> On rational-basis review, . . . a statute . . . comes to us bearing a strong presumption of validity, and those attacking the rationality of the [statute] have the burden to *negative every conceivable basis which might support it*.  Moreover, because we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason . . . actually motivated the legislature. . . .  In other words, a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data.  Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function.

*Id.* at 313-15, 113 S. Ct. at 2101-02 (citations and quotations omitted) (emphasis added).  In addition, "the legislature must be allowed leeway to approach a perceived problem incrementally," even if its incremental approach is significantly over-inclusive or under-inclusive.  *Id.* at 316, 113 S. Ct. at 2102; *see also, e.g.*,

6

*Heller v. Doe by Doe*, 509 U.S. 312, 321, 113 S. Ct. 2637, 2643 (1993); *Haves v. City of Miami*, 52 F.3d 918, 923 (11th Cir. 1995). Only in an exceptional circumstance will a statute not be rationally related to a legitimate government interest and be found unconstitutional under rational basis scrutiny.[3]

The district court systematically considered whether the Alabama sexual devices distribution criminal statute has a rational basis. *See* 41 F. Supp. 2d at 1284-1293. First, the court examined three interests it believed had been relied upon by the State: banning the public display of obscene material, banning "the commerce of sexual stimulation and auto-eroticism, for its own sake, unrelated to marriage, procreation, or familial relationships," and banning the commerce in obscene material. *Id.* at 1286-87. The district court concluded each of these

---

[3] An example of such an exceptional circumstance recognized by this Court is the irrationality of government attempts to regulate the dress and grooming of adults. *See DeWeese v. Town of Palm Beach*, 812 F.2d 1365, 1368-70 (11th Cir. 1987) (invalidating town ordinance requiring male joggers to wear shirts); *Lansdale v. Tyler Junior College*, 470 F.2d 659, 662-63 (5th Cir. 1972) (en banc) (adopting presumption that state's interests in education and educational environment did not rationally justify hair-length regulation at junior college, although under *Karr v. Schmidt*, 460 F.2d 609 (5th Cir. 1972) (en banc), those interests presumptively could rationally justify dress and grooming regulations in high schools); *also compare Hander v. San Jacinto Junior College*, 519 F.2d 273 (5th Cir. 1975) (holding under *Lansdale* that junior college could not fire faculty member for refusing to shave beard), *with Domico v. Rapides Parish School Bd.*, 675 F.2d 100 (5th Cir. 1982) (holding that school board may apply dress code to employees of high school), *and Kelley v. Johnson*, 425 U.S. 238, 96 S. Ct. 1440 (1976) (sustaining hair grooming regulation in police department).

7

interests was a legitimate interest the State constitutionally could pursue. *See id.*

Second, the court considered whether prohibiting the distribution of sexual devices is rationally related to these legitimate interests. For each interest, the court concluded the law did not rationally advance the State's objective. *See id.* at 1288-93. With respect to public decency, the district court found the ban on the distribution of sexual devices to be "absolutely arbitrary" because "[i]nnumerable measures far short of an absolute ban on the distribution of sexual devices would accomplish the State's goals." *Id.* at 1288. The court also determined the ban was irrationally related to the interest in discouraging commerce in auto-eroticism because the ban, by its very terms, also interfered with the very sexual stimulation and eroticism related to marriage and procreation with which the State disclaimed any intent to interfere. *See id.* at 1288-90. Finally, the court concluded the statute was an irrational means of banning obscenity because Alabama "banned the distribution of *all* sexual devices in an effort to prohibit the few which may be found obscene." *Id.* at 1293. The court therefore held the statute failed rationally to advance any legitimate state interest and accordingly was unconstitutional. *See id.*

We conclude the district court erred in determining the statute lacks a rational basis. The State's interest in public morality is a legitimate interest

rationally served by the statute. The crafting and safeguarding of public morality

has long been an established part of the States' plenary police power to legislate

and indisputably is a legitimate government interest under rational basis scrutiny.

*See, e.g.*, *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 569, 111 S. Ct. 2456, 2462

(1991) (citing *Bowers v. Hardwick*, 478 U.S. 186, 196, 106 S. Ct. 2841, 2846

(1986); *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 61, 93 S. Ct. 2628, 2637

(1973); *Roth v. United States*, 354 U.S. 476, 77 S. Ct. 1304 (1957)).[4] A statute

banning the commercial distribution of sexual devices is rationally related to this

interest. Alabama argues "a ban on the sale of sexual devices and related orgasm

stimulating paraphernalia is rationally related to a legitimate legislative interest in

discouraging prurient interests in autonomous sex" and that "it is enough for a

legislature to reasonably believe that commerce in the pursuit of orgasms by

artificial means for their own sake is detrimental to the health and morality of the

State." Appellant's Brief at 13, 16. The criminal proscription on the distribution

of sexual devices certainly is a rational means for eliminating commerce in the

---

[4] In fact, the State's interest in public morality is sufficiently substantial to satisfy the government's burden under the more rigorous intermediate level of constitutional scrutiny applicable in some cases. *See, e.g.*, *City of Erie v. Pap's A.M.*, ___ U.S. ___, 120 S. Ct. 1382, 1395-97 (2000); *Barnes*, 501 U.S. at 569, 111 S. Ct. 2462. For purposes of consistency in this case, however, we will refer to the interest as legitimate.

devices, which itself is a rational means for making the acquisition and use of the devices more difficult. Moreover, incremental steps are not a defect in legislation under rational basis scrutiny, so Alabama did not act irrationally by prohibiting only the commercial distribution of sexual devices, rather than prohibiting their possession or use or by directly proscribing masturbation with or without a sexual device. Thus, we hold the Alabama sexual devices distribution criminal statute is constitutional under rational basis scrutiny because it is rationally related to at least one legitimate State interest.

In addition, the district court's application of rational basis scrutiny to the three state interests it considered was erroneous because the court relied heavily upon three Supreme Court decisions, *Romer v. Evans*, 517 U.S. 629, 116 S. Ct. 1620 (1996), *Turner v. Safley*, 482 U.S. 78, 107 S. Ct. 2254 (1987), and *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 105 S. Ct. 3249 (1985), in concluding the statute does not rationally advance the State's interests the district court conceded were legitimate. *See* 41 F. Supp. 2d at 1288, 1293. These cases do not support the district court's application of rational basis scrutiny in this case.

First, the *Turner v. Safely* decision established a deferential reasonableness standard as the level of scrutiny to be applied when a prison regulation infringes an inmate's constitutional interests. *See Turner*, 482 U.S. at 89-91, 107 S. Ct. at

10

2261-63. Although similar in part (and sometimes in description) to ordinary rational basis review, the *Turner* standard requires a more searching, four-part inquiry. The first prong considers whether the prison regulation is rationally related to a legitimate penological interest (a class of interests more narrow than those considered under ordinary rational basis review); the other prongs address whether the inmate has alternative means of exercising the constitutional right, the burden on the prison in accommodating the right, and whether the regulation is an exaggerated response to prison concerns. *See id.* at 89-91, 107 S. Ct. at 2261-63; *see also, e.g., O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349-53, 107 S. Ct. 2400, 2404-07 (1987); *Pope v. Hightower*, 101 F.3d 1382, 1384 (11th Cir. 1996); *Harris v. Thigpen*, 941 F.2d 1495, 1516 (11th Cir. 1991). Accordingly, cases decided under the *Turner* standard, and *Turner* itself, are inapplicable to cases, like this one, concerning the constitutional protection accorded by ordinary rational basis scrutiny to citizens in free society.

Second, the district court also erred by applying *Romer v. Evans*. In *Romer*, the Supreme Court invalidated a provision of the Colorado state constitution that imposed a special limitation on participation in the political process upon one group, homosexuals. Applying rational basis scrutiny, the Court held that Colorado's provision was unconstitutional. *See* 517 U.S. at 632, 116 S. Ct. at

11

1627.  As described by the Court, the provision "withdraws from homosexuals, but no others, specific legal protection from the injuries caused by discrimination, and it forbids reinstatement of these laws and policies," *id*. at 627, 116 S. Ct. at 1625, "bars homosexuals from securing protection against the injuries that these public-accommodations laws address," and "operates to repeal and forbid all laws or policies providing specific protection for gays or lesbians from discrimination by every level of Colorado government," *id.* at 629, 116 S. Ct. at 1626, resulting in a situation in which "[h]omosexuals are forbidden the safeguards that others enjoy or may seek without constraint. They can obtain specific protection against discrimination only by enlisting the citizenry of Colorado to amend the State Constitution." *Id.* at 631, 116 S. Ct. at 1627.  The Court then noted that "[t]he resulting disqualification of a class of persons from the right to seek specific protection from the law is unprecedented in our jurisprudence. . . .  It is not within our constitutional tradition to enact laws of this sort. . . .  A law declaring that in general it shall be more difficult for one group of citizens than for all others to seek aid from the government is itself a denial of equal protection of the laws in the most literal sense." *Id.* at 633, 116 S. Ct. at 1628.  The significance of *Romer*, therefore,  is the Court's holding that Colorado's provision had not been enacted in pursuit of any legitimate government interest: the provision was "an exceptional

12

and . . . invalid form of legislation." *Id.* at 632, 116 S. Ct. at 1627.  The State had

no legitimate interest in imposing an inability to obtain the protection of anti-

discrimination laws (without amending the state constitution) on any particular

group, including homosexuals.[5]  *Cf. Shahar v. Bowers*, 114 F.3d 1097, 1110 (11th

Cir. 1997) (en banc) ("*Romer* . . . struck down an amendment to a state constitution

as irrational because the amendment's sole purpose was to disadvantage a

particular class of people"); *id.* at 1126 (Birch, J., dissenting) ("the Court rejected

the state's rationale, declaring that animosity toward the class of homosexuals is

not a legitimate basis for state action") (quotation omitted).  The statute at issue in

this case, however, raises no similar concerns.  The district court agreed the three

state interests it discussed were legitimate, *see* 41 F. Supp. 2d at 1286-87, and we

---

[5] The *Romer* Court also discussed whether the Colorado provision was rationally related to a government interest.  The Court determined the provision's "sheer breadth is so discontinuous with the reasons offered for it that the amendment seems inexplicable by anything but animus toward the class it affects," *id.* at 632, 116 S. Ct. at 1627, and that "[t]he breadth of the amendment is so far removed from these particular justifications that we find it impossible to credit them." *Id.* at 635, 116 S. Ct. at 1629.  Although discussed in terms of the rationality of the relationship of means to ends, in effect the Court reasoned that the type of means adopted showed that no legitimate end was being pursued: "[L]aws of the kind now before us raise the inevitable inference that the disadvantage imposed is born of animosity toward the class of persons affected," *id.* at 634, 116 S. Ct. at 1628, amounting to "a classification of persons undertaken for its own sake, something the Equal Protection Clause does not permit." *Id.* at 635, 116 S. Ct. at 1629.

have held there is at least one legitimate state interest, the regulation of public morality, that justifies this statute.  Consequently, *Romer*'s holding that the Colorado provision was supported by no legitimate state interest has no bearing in this case.

Third, the Equal Protection Clause as-applied analysis of *City of Cleburne* has little relevance to the fundamental rights facial challenge raised by the plaintiffs in this case.  The Supreme Court recently reaffirmed that the Equal Protection Clause is violated (in cases in which heightened scrutiny does not apply) when the plaintiff—whether a class, group, or simply one individual—proves "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 120 S. Ct. 1073, 1074 (2000) (holding that plaintiff stated constitutional Equal Protection Clause cause of action by alleging that village acted irrationally, wholly arbitrarily, and out of malice toward plaintiff when it demanded 33-foot easement from plaintiff, contrary to 15-foot easements obtained from others similarly situated).  In *City of Cleburne*, the Court had applied this principle in holding that the city had violated the Equal Protection Clause by requiring a special use permit for a group home for mentally disabled persons but not for many other similar kinds of group homes.  After rejecting the

14

application of heightened scrutiny, *see* 473 U.S. at 442, 105 S. Ct. at 3255, the Court considered the city's arguments that the permit requirement was based on the following government interests: neighbors' negative opinions and fears of elderly neighbors, proximity to a junior high school, location on a flood plain, size of the home and number of residents it would house, fire hazards, neighborhood serenity, and danger to neighbors. *See id.* at 448-50, 105 S. Ct. at 3259-60. The Court did not discount the legitimacy of these interests, but rather found that, in creating the means used to carry out these interests, the city had adopted a classification that had no rational basis:

> The city does not require a special use permit . . . for apartment houses, multiple dwellings, boarding and lodging houses, fraternity or sorority houses, dormitories, apartment hotels, hospitals, sanitariums, nursing homes for convalescents or the aged (other than for the insane or feebleminded or alcoholics or drug addicts), private clubs or fraternal orders, and other specified uses. It does, however, insist on a special permit for the Featherston home, and it does so, as the District Court found, because it would be a facility for the mentally retarded. . . . But this difference is largely irrelevant unless the Featherston home and those who would occupy it would threaten legitimate interests of the city in a way that other permitted uses such as boarding houses and hospitals would not. Because in our view *the record does not reveal any rational basis* for believing that the Featherston home would pose any special threat to the city's legitimate interests, we affirm the judgment below insofar as it holds the ordinance invalid as applied in this case.

15

*Id.* at 447-48, 105 S. Ct. at 3258 (emphasis added).[6]  In this case, by contrast, the plaintiffs have presented a fundamental rights facial challenge to the Alabama statute; they have not alleged an Equal Protection Clause violation, much less argued that the statute would make any irrational classifications among persons in its enforcement.  Accordingly, the rational basis analysis of *City of Cleburne* does not support the district court's conclusion that this statute lacks a rational basis.

Finally, the plaintiffs maintain the district court did not err in finding the statute to be constitutionally irrational because Alabama's statute is contrary to a wide spectrum of public and professional opinions.  The plaintiffs argue these opinions recognize numerous legitimate and beneficial uses of sexual devices, especially the necessity of sexual devices for some persons to achieve medical or emotional health.  However misguided the legislature of Alabama may have been in enacting the statute challenged in this case, the statute is not constitutionally irrational under rational basis scrutiny because it is rationally related to the State's legitimate power to protect its view of public morality.  "The Constitution

---

[6] Similar to *Romer*, the *City of Cleburne* Court noted that "requiring the permit in this case appears to us to rest on an irrational prejudice against the mentally retarded."  *Id*. at 450, 105 S. Ct. at 3260.  Unlike *Romer*, however, this conclusion was directed not to the legitimacy of the city's ends, but rather bolstered the Court's determination that the classification of persons drawn by the city in carrying out its ends was constitutionally irrational.

16

presumes that . . . improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted." *Vance v. Bradley*, 440 U.S. 93, 97, 99 S. Ct. 939, 942-943 (1979). This Court does not invalidate bad or foolish policies, only unconstitutional ones; we may not "sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S. Ct. 2513, 2517 (1976).

For the foregoing reasons, we hold the Alabama statute challenged in this case has a rational basis. We therefore reverse the district court's judgment to the contrary.

B. Fundamental Rights Analysis

In their fundamental rights arguments, the plaintiffs challenged the constitutionality of the statute on its face and as applied. We conclude the district court correctly rejected the facial challenge, but we remand the as-applied challenges.

1. Facial Challenge

"A facial challenge to be successful 'must establish that *no* set of

circumstances exists under which the Act would be valid.'" *Adler v. Duval County School Bd.*, 206 F.3d 1070, 1083-84 (11th Cir. 2000) (en banc) (quoting *United States v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 2100 (1987)). Unless the statute is unconstitutional in all its applications, an as-applied challenge must be used to attack its constitutionality.

Initially, we must determine how to frame the nature and scope of a constitutional right that would facially invalidate the Alabama statute. Alabama maintains the plaintiffs are claiming simply a "right to sell or buy" sexual devices. Such a right would receive little constitutional protection because ordinary economic and commercial regulations are subject only to rational basis scrutiny. *See, e.g.*, *Beach Communications*, 508 U.S. at 314, 113 S. Ct. at 2101 ("In areas of social and economic policy, . . . any reasonably conceivable state of facts that could provide a rational basis for the" statute is sufficient to sustain its constitutionality); *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 489, 75 S. Ct. 461, 465 (1955). The plaintiffs respond that a right of greater constitutional significance is at stake: in the narrowest sense, the plaintiffs assert a fundamental "right to use" sexual devices; more generally, the plaintiffs invoke the Supreme Court's cases establishing a constitutionally protected fundamental right to privacy. The district court narrowly framed the analysis as the question

18

"whether the concept of a constitutionally protected 'right to privacy' protects an individual's liberty to use [sexual devices] when engaging in lawful, private, sexual activity." 41 F. Supp. 2d at 1275; *see also id.* at 1281 & n.30. For purposes of the facial challenge, the right is more precisely stated as whether the Constitution protects such liberty of *every* individual.

In light of the Supreme Court's decision in *Carey v. Population Services International*, 431 U.S. 678, 97 S. Ct. 2010 (1977), we conclude the district court correctly framed the fundamental rights analysis in this case. Following its decisions holding a state may not criminalize every sale or distribution of contraceptives, *see Griswold v. Connecticut*, 381 U.S. 479, 85 S. Ct. 1678 (1965); *Eisenstadt v. Baird*, 405 U.S. 438, 92 S. Ct. 1029 (1972), the Supreme Court struck down a narrower New York law criminalizing the sale of contraceptives to persons under 16 years of age and the sale of contraceptives by non-pharmacists. *See Carey*, 431 U.S. at 681-82, 97 S. Ct. at 2014. The Court explained that:

> [T]he Constitution protects individual decisions in matters of childbearing from unjustified intrusion by the State. Restrictions on the distribution of contraceptives clearly burden the freedom to make such decisions. . . . This is so not because there is an independent fundamental "right of access to contraceptives," but because such access is essential to exercise of the constitutionally protected right of decision in matters of childbearing that is the underlying foundation of the holdings in *Griswold*, *Eisenstadt v. Baird*, and *Roe v. Wade*.

431 U.S. at 687-89, 97 S. Ct. at 2017-18; *see also id*. at 689-91, 97 S. Ct. at 2108-

19

19 (concluding that New York law fails strict scrutiny for lack of compelling state interest). Similarly, because the statute prohibiting the distribution of sexual devices would burden an individual's ability to use the devices, the analysis in this case must be framed not in terms of whether the Constitution protects a right to sell or buy sexual devices, but rather in terms of whether there is a fundamental constitutional interest—broad or narrow—that encompasses a right to use sexual devices and invalidates this statute on its face.

We conclude there is no controlling precedent that specifically establishes the facial unconstitutionality of this statute.[7] The fundamental constitutional rights of privacy recognized to date by the Supreme Court in the area of sexual activity each have followed from the Court's protection of a person's right to make the

---

[7] Alabama suggests two precedents interpreting similar statutes, *Sewell v. Georgia*, 435 U.S. 982, 98 S. Ct. 1635 (1978), and *Red Bluff Drive-In, Inc. v. Vance*, 648 F.2d 1020 (5th Cir. June 1981) (binding authority under *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc)), establish the constitutionality of this statute. We conclude neither decision is controlling here. The Supreme Court in *Sewell* dismissed an appeal from the Supreme Court of Georgia for want of a substantial federal question, *see* 435 U.S. at 982, 98 S. Ct. at 1635, a disposition that "prevent[s] lower courts from coming to opposite conclusions on the *precise* issues presented and *necessarily* decided by those actions." *Langelier v. Coleman*, 861 F.2d 1508, 1511 (11th Cir. 1988) (quoting *Mandel v. Bradley*, 432 U.S. 173, 176, 97 S. Ct. 2238, 2240 (1977)) (emphasis added). The only issues necessarily decided in *Sewell*, however, were First Amendment obscenity arguments. *See Sewell v. State*, 233 S.E.2d 187, 188-89 (Ga. 1977). Similarly, *Vance* decided only a First Amendment obscenity challenge. *See* 648 F.2d at 1027-28.

decision not to procreate without governmental interference. Specifically, the Court has repeatedly sustained a right to prevent pregnancy through the use of contraceptives, *see Griswold*, 381 U.S. at 479, 85 S. Ct. at 1678; *Eisenstadt*, 405 U.S. at 438, 92 S. Ct. at 1029; *Carey*, 431 U.S. at 678, 97 S. Ct. at 2010, as well as a woman's qualified right to terminate a pregnancy, *see, e.g.*, *Planned Parenthood v. Casey*, 505 U.S. 833, 112 S. Ct. 2791 (1992); *Roe v. Wade*, 410 U.S. 113, 93 S. Ct. 705 (1973). More than half a century ago, the Court also protected the right to procreate, invalidating a state's provision for involuntary sterilization of habitual criminals. *See Skinner v. Oklahoma*, 316 U.S. 535, 62 S. Ct. 1110 (1942). The Court also has recognized other fundamental rights, including rights of privacy unrelated to sexual activity, that protect personal autonomy from governmental intrusion. *See, e.g.*, *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 186, 110 S. Ct. 2841 (1990) (sustaining right to refuse medical treatment); *Loving v. Virginia*, 388 U.S. 1, 87 S. Ct. 1817 (1967) (invalidating ban on interracial marriage). None of these cases, however, is decisive on the question whether the Constitution protects every individual's right to private sexual activity and use of sexual devices from being burdened by Alabama's sexual device distribution criminal statute.

We therefore must determine whether we may, in this case, recognize an

21

"extension of the 'right to privacy[,]' which the Supreme Court has recognized as fundamental in certain contexts," that is broad enough to facially invalidate the Alabama statute. 41 F. Supp. 2d at 1275; *see id.* at 1282. Extending the constitutional right to privacy to include a broad fundamental right to all sexual autonomy, such as a privacy right to engage in any form of private consensual sexual behavior between adults, is directly precluded by Supreme Court precedent. In *Bowers v. Hardwick*, 478 U.S. 186, 106 S. Ct. 2841 (1986), the Supreme Court sustained against a fundamental right to privacy challenge Georgia's criminal sodomy statute as applied to homosexual conduct.[8] The Court reviewed its fundamental rights precedent and expressly noted that "any claim that these cases . . . stand for the proposition that any kind of private sexual conduct between consenting adults is constitutionally insulated from state proscription is unsupportable." *Id.* at 191, 106 S. Ct. at 2844; *see also Glucksberg*, 521 U.S. at 727, 117 S. Ct. at 2271 ("That many of the rights and liberties protected by the Due Process Clause sound in personal autonomy does not warrant the sweeping

---

[8] A panel of this Court had recognized a broad fundamental right to sexual privacy, relying particularly upon the Supreme Court's contraception and abortion cases, in precluding Georgia from criminalizing private consensual adult sodomy. *See Hardwick v. Bowers*, 760 F.2d 1202, 1210-13 (11th Cir. 1985). The Supreme Court reversed, by a 5-4 majority, emphasizing the traditional prohibition of homosexual sodomy. *See Bowers*, 478 U.S. at 190-96, 106 S. Ct. at 2844-46.

conclusion that any and all important, intimate, and personal decisions are so protected. . . .").

In light of *Bowers*, there would be no violation of any fundamental constitutional right to the extent the application of Alabama's statute infringed upon the sexual activity of homosexuals. The statute has possible constitutional applications and therefore is not facially unconstitutional. The district court correctly rejected the plaintiffs' facial challenge to the statute.

2. As-Applied Challenges

We conclude the district court did not adequately consider the as-applied fundamental rights challenges raised by the plaintiffs. Accordingly, we remand for the district court to consider these claims in the first instance.

The district court failed to specifically consider the as-applied challenges raised by the four "user" plaintiffs. Betty Faye Haggermaker and Alice Jean Cope are married women who use sexual devices with their husbands. *See* 41 F. Supp. 2d at 1264. Sherry Taylor-Williams and Jane Doe began using sexual devices in marital intimacy but both are now single. *See id.* at 1264-65. Although the statute is not facially unconstitutional because, in light of *Bowers*, it may constitutionally be applied to homosexual activity—and the district court therefore correctly declined to recognize an expansive fundamental right encompassing the

23

use of sexual devices in every kind of lawful, private, sexual activity—the as-applied challenges raised by the plaintiffs, married or unmarried, implicate interests in sexual privacy different from those rejected in *Bowers*. *See Griswold*, 381 U.S. at 485-86, 85 S. Ct. at 1682 ("Would we allow the police to search the sacred precincts of marital bedrooms . . ?  The very idea is repulsive to the notions of privacy surrounding the marriage relationship."); *Glucksberg*, 521 U.S. at 720, 117 S. Ct. at 2267 (citing *Griswold* as holding the Constitution protects a fundamental right "to marital privacy"); *Bowers*, 478 U.S. at 188 n.2, 190-91, 106 S. Ct. 2842, 2843-44 (noting significance of fact that no constitutional challenge to sodomy statute concerning marriage had been properly presented); *see also Casey*, 505 U.S. at 898, 112 S. Ct. at 2831 (invalidating provision requiring notification of married woman's spouse before abortion could be performed because "[w]omen do not lose their constitutionally protected liberty when they marry. The Constitution protects all individuals, male or female, married or unmarried, from the abuse of governmental power, even where that power is employed for the supposed benefit of a member of the individual's family"); *Eisenstadt*, 405 U.S. at 453, 92 S. Ct. at 1033 ("[T]he rights of the individual to [have] access to contraceptives . . . must be the same for the unmarried and married alike."); *Bowers*, 478 U.S. at 209 n.4, 106 S. Ct. at 2853 n.4 (Blackmun, J., dissenting) (questioning validity of

24

categorizations of sexual activity depending on marital status); *id.* at 216, 106 S. Ct. at 2857 (Stevens, J., dissenting) (citing *Eisenstadt* and *Carey* as holding that fundamental rights protection in sexual matters "extends to intimate choices by unmarried as well as married persons").

We remand the as-applied challenges for due consideration by the district court because the record and stipulations in this case simply are too narrow to permit us to decide whether or to what extent the Alabama statute infringes a fundamental right to sexual privacy of the specific plaintiffs in this case. In *Glucksberg*, its most recent case in which an argument for recognition of a new fundamental right was presented, the Supreme Court instructed that a fundamental right must be "objectively, deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [the right] were sacrificed." 521 U.S. at 720-21, 117 S. Ct. at 2268 (citations and quotations omitted). In concluding the Constitution did not include such a fundamental right of physician-assisted suicide, the Court discussed at length not only the long history of the proscription of suicide and assisting suicide but also the considerable contemporary nationwide legislative action to preserve such laws. *See id.* at 710-19, 117 S. Ct. at 2262-67. By contrast, in this case the district court considered in two paragraphs only whether the "use of sexual

devices" is a deeply rooted and central liberty. *See* 41 F. Supp. 2d at 1283-84 & n.33. The court analyzed neither whether our nation has a deeply rooted history of state interference, or state non-interference, in the private sexual activity of married or unmarried heterosexual persons nor whether contemporary practice bolsters or undermines any such history. The record is bare of evidence on these important questions. Absent the kind of careful consideration the Supreme Court performed in *Glucksberg*, we are unwilling to decide the as-applied fundamental rights analysis and accordingly remand those claims to the district court.

## III. CONCLUSION

The Alabama statute making it a criminal offense to commercially distribute sexual devices in the State is rationally related to the State's legitimate government interest in public morality. The district court therefore erred invalidating the statute under rational basis scrutiny. The statute also survives the plaintiffs' facial challenge asserting fundamental constitutional rights. We conclude, however, the plaintiffs' as-applied fundamental rights challenges must be considered further by the district court.

REVERSED AND REMANDED.